In the Matter of WILLIAM L. (ANONYMOUS), a Person Alleged to be a Juvenile Delinquent, Appellant.

Second Department, January 29, 1968.

*Charles Schinitsky* and *Annette Pinsky* (*Mary V. Magilligan* of counsel), for appellant.

*J. Lee Rankin, Corporation Counsel* (*Stanley Buchsbaum* and *Raymond S. Hack* of counsel), for respondent.

HOPKINS, J. On November 6, 1966, between 6:00 and 6:30 P.M., during a gang fight in front of the Carlton Theatre on

Flatbush Avenue, Brooklyn, Luis Maldonado was stabbed to death. William L., then aged 14 years, the appellant, was one of several persons arrested thereafter for the homicide. By petition of Detective Edmund O'Rourke, dated November 7, 1966, William was accused of the stabbing, along with two others. He was tried before the Family Court and found to have committed an act which, if committed by an adult, would have constituted the crime of homicide; and, thereupon, was adjudged a juvenile delinquent.

The case against William rests principally on his statement to Detective O'Rourke that he had stabbed Maldonado during a melee before the theatre between the Beltone Bishops, of which Maldonado was a member, and the Sovereign Lords, of which William was a member. The question before us is whether the statement was admissible in evidence, in view of the circumstances under which it was obtained.

William was awakened by four policemen at 3:00 A.M. on November 7, 1966 at his home and brought to the 78th Precinct squad office. His mother was told that a murder had been committed in the neighborhood and that there was no proof that William had done it, but that the police had been informed that he was involved. She asked whether she might accompany William to the police station and was told that it was not a serious matter and that her son would be home in an hour or two.

At the squad room William was questioned by Detective O'Rourke in company with four or five police officers. O'Rourke testified: "I told him he was entitled to a lawyer; that if he did not have one we would get one; that I apprised him if he wished to remain silent he could; and anything he said would be used against him." William did not respond to these warnings, but "stated he wanted to talk, and he said he wanted to tell what happened." The questioning of William and Charles, another juvenile involved in the incident, was completed in about an hour. Both William and Charles were charged with delinquency at 5:00 A.M. William's mother was informed by the police of the charge against William at 7:00 A.M.

On behalf of William it is urged that his statement, amounting to a confession since it embraced an admission of all of the elements of the crime, was inadmissible in the Family Court and should have been suppressed after the *voir dire* hearing, under the traditional standards of due process. We think that in the perspective of this case this contention must be sustained.

"We conclude that the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution

in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child '' (*Matter of Gault,* 387 U. S. 1, 41). It is without dispute that William's mother was never advised of William's right to counsel or to have counsel appointed, if they could not because of their poverty retain counsel, prior to William's questioning which led to his confession. True, Detective O'Rourke meticulously advised William of his rights pursuant to *Miranda* v. *Arizona* (384 U. S. 436), but so far as this record discloses, William's mother was not present at the time.

As the Supreme Court said in *Gault* (*supra*), special problems with respect to the privilege against self incrimination may arise in the case of juveniles and some difference in technique may be required, depending on the age of the child and the presence and competence of parents, as well as the participation of counsel. '' If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair '' (*Matter of Gault, supra*, p. 55).

We think it almost self-evident that a boy of 14, aroused from his sleep at 3:00 A.M., taken to a police station and questioned by four or five police officers concerning a homicide, would scarcely be in a frame of mind capable of appreciating the nature and effect of the constitutional warnings given him before the questioning begins. More than the making of the confession alone is required in order to find a conscious and understanding waiver of the juvenile's rights (cf. *People* v. *Witenski,* 15 N Y 2d 392, 393). Indeed, even apart from the mandates of *Gault* and *Miranda* (*supra*), the circumstances of William's confession render it invalid under the requirements of due process and the special conditions of care which a juvenile's interrogation demands (*Haley* v. *Ohio,* 332 U. S. 596, 599–600; *Gallegos* v. *Colorado,* 370 U. S. 49; *Matter of Gregory W.,* 19 N Y 2d 55). The age and immaturity of the juvenile, both emotionally and intellectually, create the need for the advice of counsel and his presence at the questioning when charges of juvenile delinquency may ensue (cf. Family Ct. Act, §§ 724, 728, 741, 744).

But it is said by the petitioner that we should not apply the rigors of due process to this proceeding, because the trial was held prior to the decision of *Gault* (*supra*) in the Supreme Court, and its pronouncements should not be made retrospective. This contention echoes the conclusion in *Johnson* v. *New*

*Jersey* (384 U. S. 719) and *People* v. *McQueen* (18 N Y 2d 337) that the doctrine of *Miranda* (*supra*) should operate only as to trials held subsequent to the date of *Miranda* (June 13, 1966). As the trial here was held on January 5, 1967 and *Gault* (*supra*) was decided on May 15, 1967, it is argued that we should overlook the dictates which it imposes in Family Court proceedings.

There are several reasons why we hold that the petitioner's argument should not prevail. We observe, first of all, that under *Johnson* and *McQueen* (*supra*), if William had been an adult, he would have been entitled to the benefits of the *Miranda* principles, including the discharge by the petitioner of the heavy burden of demonstrating an understanding waiver by William of his rights. We do not perceive any valid ground for denying William those benefits simply because he is a child. Indeed, Detective O'Rourke recognized, at least inferentially, the application of *Miranda* to William when he gave the fourfold warning which it requires before questioning William.

Moreover, though each advance of constitutional dogma in the law pertinent to criminal actions may induce an inquiry concerning the retroactive effect of the determination to pending cases (cf. *People* v. *Kaiser,* 21 N Y 2d 86), as contrasted to the usual rule that the law is effectuated as it exists at the time of decision (*People* v. *Loria,* 10 N Y 2d 368, 370–371), the definition of the reach of *Gault* (*supra*) should be ascertained as in any other precedent according to the " merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation " (*Linkletter* v. *Walker,* 381 U. S. 618, 629).

The decision in *Matter of Gregory W.* (19 N Y 2d 55, *supra*), made by the Court of Appeals on December 30, 1966, antedated the trial in this case and made it clear, as the opinion in *Gault* (*supra*) approvingly noted, that due process must be respected in obtaining juvenile confessions (*Matter of Gault,* 387 U. S. 1, 48, 52, *supra*). Thus, Gault was not an innovation but rather a confirmation of a rule which was in effect in New York at the time of the trial here. In addition, the legislative policy of the Family Court Act provisions relating to juvenile delinquency proceedings, effective for some years at the time of the trial, declared that due process was applicable (Family Ct. Act, § 711). In this background of the history of the rights here in issue, we think that the commands of due process, as *Gault* recognized and lent them shape and proportion, were not extended beyond *Matter of Gregory W.* (*supra*). No genuine question of retroactivity of *Gault* consequently emerges in this appeal. Indeed, *Matter of Gregory W.* did not limit the effect

of its determination to trials or cases arising thereafter; the application of due process to juvenile proceedings was not merely hortatory; and the opinion did not suggest an annihilation of the rights of juveniles in the appellate process (cf. *People* v. *Huntley,* 15 N Y 2d 72; *Tehan* v. *Shott,* 382 U. S. 406, 418–419; and see, Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 42 N. Y. Univ. L. Rev. 631).

The order of the Family Court should be reversed, on the law, without costs, and the matter remanded to the Family Court for further proceedings not inconsistent herewith.

BELDOCK, P. J., CHRIST, BRENNAN and RABIN, JJ., concur.

Order of the Family Court, Kings County, dated January 5, 1967, reversed, on the law, and matter remanded to the Family Court for further proceedings not inconsistent with the opinion herein. No questions of fact were considered on this appeal.