In the Matter of AARON D., a Person Alleged to be a Juvenile Delinquent, Appellant.

First Department, June 18, 1968.

*Rena K. Uviller* of counsel (*Charles Schinitsky,* attorney), for appellant.

*Raymond S. Hack* of counsel (*Stanley Buchsbaum* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for respondent.

EAGER, J. This is an appeal from an order of the Family Court adjudicating the appellant (Aaron, D.) a juvenile delinquent. The order is based upon a finding that Aaron had committed an act which, if done by an adult, would constitute the crime of homicide, and upon a further finding that he requires supervision, confinement or treatment.

Aaron's participation in the alleged crime must be considered as disputed. There is no evidence that he was in any way involved in the alleged homicide other than his alleged inculpatory admissions to the police after he was taken into custody. The question presented on this appeal is whether the taking of the incriminatory statements by the police and their use against Aaron violated due process and statutory requirements. We conclude that there was such violation and that the order of the Family Court must be reversed.

The proceedings in relation to a charge of juvenile delinquency, " resulting as they do in a loss of personal freedom, are at the very least quasi-criminal in nature." (*Matter of Gregory W.,* 19 N Y 2d 55, 62. See, also, *Matter of Gault,* 387 U. S. 1; *Matter of Whittington,* 391 U. S. 341.) Consequently, the respondent in such a proceeding must be fully protected against involuntary self incrimination. If a statement or confession is to be used against him, there must be full compliance with due process requirements. (*Matter of Gregory W., supra; Matter of Gault, supra.*) These requirements include adequate notice to the child and his parents of the charges and of his rights.

It is noted that " special problems with respect to the privilege against self incrimination may arise in the case of juveniles and some difference in technique may be required, depending on the age of the child and the presence and competence of parents, as well as the participation of counsel. ' If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair ' (*Matter of*

*Gault, supra,* p. 55).'' (*Matter of William L.,* 29 A D 2d 182, 184.)

Where the child is taken and detained in custody by police officers (see Family Ct. Act, §§ 721–729), the proper safeguarding of his privilege against self incrimination suggests that he should not be questioned until he and at least one of his parents are notified of his right to remain silent and of their right to counsel, with a further notification that counsel will be appointed if they are unable to afford a defense. If, after proper cautioning, the youth or his parent demands the assistance of counsel, he should be afforded such assistance. (See *Matter of Gault, supra; Matter of William L., supra.*) Here, there was a failure to comply with these safeguards and, as the undisputed facts will demonstrate, the police officers failed to exercise proper care to assure the voluntariness of Aaron's incriminating statements.

Aaron, who has just reached age 15, was taken from his home on January 19, 1967, by two police officers who informed his mother that he was involved in a stabbing. The mother, however, was not told that the police were investigating the boy's connection with the crimes of robbery and homicide, which was the fact, nor was she informed of the boy's right to remain silent and to have the benefit of counsel. The police merely told his mother '' that she could come down to the station house, if she wished '', and she requested the officers to call her when they got there. While Aaron was being transported by car to the station house in the company of the two officers, and without warning of his constitutional rights, he was questioned to some extent about the crime. Although he made no prejudicial admissions during the car ride, this was the inception of the '' in custody '' period prior to which Aaron and his mother should have been fully informed of his rights. On arrival at the station house, the boy was taken to the squad room preparatory to the obtaining of a statement from him. Aaron's mother was not immediately called but Aaron was informed that he had a right to remain silent, that anything he did say may be used against him in a court of law, that he had the right to have an attorney, that if he could not afford an attorney, the court would appoint one to represent him, and that he had a right to remain silent until he had an opportunity to consult with an attorney. In answer to the questions on the standard form, Aaron wrote that he understood these things and then, according to the testimony of an officer, he admitted his participation in the homicide and wrote a statement describing, in his own words, what had happened at the time of the incident. Thereafter, Aaron's mother

was called but no statement was taken from Aaron after she arrived.

Under the circumstances, the cautioning of the juvenile and the taking of his statements at the station house, in the absence of his mother and counsel, do not satisfy due process requirements. The procedures of the officers, as mere token observance of such requirements, were not reasonably calculated to secure the voluntariness and the validity of the statements. Clearly, if we are to follow the reasoning of *Gault* (*supra*), including the decisions cited in that opinion (see pp. 51–57), and the decision of *William L.* (*supra*), Aaron's statements given to the police were not receivable as competent evidence in the fact-finding hearing. (See Family Ct. Act, § 744, subd. [a].) (See, also, *Matter of Richard W.*, 29 A D 2d 873.)

It is true that the proceedings in this case were completed prior to the *Gault* decision, and the Corporation Counsel insists that the rejection of Aaron's confession would amount to an unjustified retroactive application of such decision. But the proceedings here were subsequent to the decisions in *Miranda* v. *Arizona* (384 U. S. 436) and in *Matter of Gregory W.* (19 N Y 2d 55), and a proper following of these decisions requires the exclusion of Aaron's statements. It was so held in *Matter of William L.* (*supra*), where Mr. Justice Hopkins stated (p. 185): "*Gault* was not an innovation but rather a confirmation of a rule which was in effect in New York at the time of the trial here. * * * No genuine question of retroactivity of *Gault* consequently emerges in this appeal."

Furthermore, the procedures used by the police were in violation of the provisions of section 724 of the Family Court Act. See *Matter of Addison*, 20 A D 2d 90, 92.) Said section, insofar as applicable here, provides:

"(a) If a peace officer takes into custody * * * a person [under the age of sixteen] * * * the peace officer shall immediately notify the parent * * * that he has been taken into custody.

"(b) After making every reasonable effort to give notice under paragraph (a), the peace officer shall

"(i) release the child to the custody of his parent * * * upon the written promise * * * that he will produce the child before the family court in that county at a time and place specified in writing; or

"(ii) forthwith and with all reasonable speed take the child directly, and without his first being taken to the police station house, to the family court * * * unless the peace officer determines that it is necessary to question the child, in which

case he may take the child to a facility designated by the appropriate appellate division of the supreme court as a suitable place for the questioning of children and there question him for a reasonable period of time; or

" (iii) take the child to a place designated by rules of court for the reception of children.

" (c) In the absence of special circumstances, the peace officer shall release the child in accord with paragraph (b) (i).

" (d) In determining what is a ' reasonable period of time ' for questioning a child, the child's age and the presence or absence of his parent  *  *  *  shall be included among the relevant considerations."

Concededly, the police, on taking Aaron into custody, did not promptly release him " to the custody of his parent ". Aaron was not taken " directly, and without his first being taken to the police station house, to the family court "; and the boy was not taken to a facility designated by the Appellate Division of this Department for questioning for a reasonable period of time. It should be noted that facilities operated by Youth House, Inc. in the City of New York had been designated for the temporary detention of allegedly delinquent children, including detention for the purposes mentioned in the aforesaid section 724.

Aaron's Law Guardian promptly and properly objected at the fact-finding hearing to the receipt in evidence of the illegally taken statements. They should not have been received. Inasmuch as the tainted statements are the only evidence establishing Aaron's connection with the alleged homicide (the Corporation Counsel so concedes), the adjudication of juvenile delinquency should be reversed, on the law, without costs, and the petition dismissed.

CAPOZZOLI, J. (concurring). I share the indignation of my learned colleague, Mr. Justice STEUER, as expressed in his dissent, however, as a court, distinguished from a legislative body, we are bound to respect and follow the precedents of higher courts which are handed down from time to time for our guidance. I agree with the majority because we are bound by the authorities cited in the majority opinion and no other lawful choice is available.

" Neither man nor child can be allowed to stand condemned by methods which flout constitutional requirements of due process of law." (Haley v. Ohio, 332 U. S. 596, 601.)

Our own Court of Appeals, in a unanimous opinion by Chief Judge FULD, has said as follows: " Vicious though the crime was, convincing though the evidence of guilt may seem to be, we could affirm only if we were to announce a doctrine that the

fundamentals of a fair trial need not be respected if there is proof in the record to persuade us of defendant's guilt. We are not prepared to announce such a doctrine." (*People* v. *Mleczko,* 298 N. Y. 153, 163.)

Under the circumstances and in view of the present law as established by binding precedents the majority could reach no other conclusion.

STEUER, J. (dissenting). The following facts appear without opposition and are disputed by no one. The appellant, a 15-year-old young man in full possession of his faculties, decided in conjunction with a few of his friends to commit a robbery. They carefully selected a suitable victim, mugged him and took his wallet. For some reason not entirely clear they then proceeded to stab him to death. In all of this the appellant was a willing participant.

Five days later two detectives appeared at the appellant's apartment and informed his mother that they were going to take the appellant to the station house for questioning in regard to a stabbing, and advised her that she could accompany them if she so wished. She refused. At the station house appellant was completely advised of his rights and no one has urged that he did not thoroughly understand that he was privileged to remain silent and to have an attorney, whether or not he could afford to pay one. There is no claim or suggestion that the statement which he subsequently wrote out in his own words and in his own handwriting was the consequence of any coercion, trickery or improper inducement on the part of the police.

The Family Court found that appellant committed an act which if committed by an adult would have amounted to a homicide and further that appellant was in need of supervision and confinement, and committed appellant to a State training school for a period not to exceed 18 months. It is difficult to see how any different finding could have been arrived at, and no one suggests that these conclusions were not warranted from the facts.

But, say the majority, the finding must be set aside and the petition dismissed and the appellant released from custody. This startling result, with its all too plain shocking consequences, is mandated upon the court by the violation of section 724 of the Family Court Act and because there was a denial of due process.

Taking first the statutory violation, section 724 (subd. [b], par. [ii]) provides for the situation where the arresting officer finds it necessary to question the suspected delinquent. Appar-

ently it is not disputed that such was the situation here. And it could not be otherwise maintained. Neither the mugging nor the homicide was witnessed by any eye other than the participants. Obviously information of the appellant's involvement came from the other miscreants. Unless the police were to accept their statements without giving appellant a chance to deny his involvement, some questioning was needed — for his own protection primarily. True it is that the statute directs that the questioning shall be conducted at a place to be designated by the Appellate Division and only for a reasonable time. That the questioning did not exceed a reasonable time is admitted, so that the only impropriety is that the questioning took place in one building rather than in another. No one has attempted any showing that any prejudice resulted from this deviation. And actually the statutory direction has been regarded of so little significance in practice that it took some searching of the records of this court to discover whether a place for questioning had ever been designated. Reliance on this extreme technicality elevates a directory provision beyond all conceivable proportions and its inclusion in the majority opinion is not believed to be other than a make weight.

Turning now to the more serious objection, it is claimed that taking the statement violated due process. And in that respect there is no quarrel on the issue of whether or not *Matter of Gault* (387 U. S. 1) is or is not to be given retroactive effect. What the Constitution interdicts is not self incrimination but involuntary self incrimination. Unfortunately the tendency to pare away the limits of what is voluntary by successive interpretations of prior interpretations has left this distinction with such a small basis that it is not astonishing that it is either not recognized or passed over lightly with a modicum of lip service. And so it is that while the rule is announced that even in the absence of counsel the confession may be admissible provided the greatest care is taken to assure that it is voluntary (*Matter of Gault, supra,* p. 55), little by little circumstances in a particular case which are held to show a lack of voluntary admission are further extended in the next one. In *Matter of William L.* (29 A D 2d 182), the boy's mother was advised by the police that the matter was not serious and she was discouraged from carrying out her original plan to accompany him. Here she was invited to attend, but this is discounted because the officer described the incident as a stabbing and not a homicide. Many years ago a distinguished jurist warned against just such a *ratio decidendi*, which he called " a jurisprudence of conceptions " (Roscoe Pound, " Mechanical Jurisprudence ", 8 Col.

L. Rev. 605, 610, quoted by CARDOZO, J., in *Hynes* v. *New York Cent. R. R. Co.*, 231 N. Y. 229, 235). The net result is that while voluntariness is shown by uncontested facts, involuntariness is found by quotations from prior decisions.

When the fog of interpretive miasma is cleared away and the real question of whether this was a voluntary statement is looked into, there is no doubt at all. A reading of the statement plus the appellant's answers to the qualifying questions, which the majority gratuitously designates as a "token compliance", explain the situation beyond cavil. Aaron D was not only willing to explain his adventure, he was anxious to do so. He had been one of a group which killed a man, which fact, per se, made him a tiger in the jungle which his predecessors have made of our streets. He was as eager to have this known as a scholar of like age is to display a Phi Beta Kappa key. District Attorneys experienced in such fields repeatedly tell us that this and similar motives (not conscience) prompt the statements that are so frequently made. (Cf., "Interrogations", 76 Yale L. J. 1519, 1562–1565 [1967].) To say that this statement was not voluntary is to give the word a new and tortured meaning.

There can be little doubt that the net effect is that the appellant, nauseatingly described as "this child", will appreciate and react to this disposition by further conduct along the same lines. How else is the staggering increase in serious juvenile crime to be accounted for other than by the knowledge that no felony, however serious, is punishable? The guarantee of due process is a shield to prevent the exaction of forced incriminatory admissions, not a legal excuse for the concealment of crime.

The order should be affirmed.

STEVENS, J. P., concurs with EAGER, J.; CAPOZZOLI, J., concurs in opinion; STEUER, J., dissents and votes to affirm in opinion in which TILZER, J., concurs.

Order entered on March 21, 1967 reversed, on the law, without costs or disbursements, and the petition dismissed.