J. George Follett, J.
On May 18, 1976, State police officers were summoned to the St. Lawrence central school at Brasher *513 Falls, New York. There they were advised that at about ten o’clock in the morning a call had been received on the internal telephone system of the school that there was a bomb in the school. Exercising due precaution, the supervising principal had directed that the school be vacated whereupon all children were moved to adjacent buildings and the school itself was subjected to a careful search.
By the time of the arrival of the police officers, the school authorities had determined that the phone call emanated from a certain study hall. The police officers commenced interviewing children who had been in that study hall at the time of incident. One or two children placed the respondent near the telephone although no one stated that they saw the respondent actually place the call. The respondent was then called to the guidance office, a room designated by section 724 of the Family Court Act as a place for the questioning of juveniles. The respondent was immediately advised of his Miranda rights; and after some preliminary hesitation, he readily admitted that it was he who had placed the call. A written statement was taken from him which he signed in the presence of the investigating officer and the guidance counselor. The respondent was then taken to his home where the statement was shown to his stepmother. The stepmother displayed surprise and disappointment but made little comment. The respondent made no further admission in the presence of the stepmother.
When the matter came on for trial in Family Court on a charge which would constitute the crime of falsely reporting an incident in violation of subdivision 1 of section 240.50 of the Penal Law, the respondent’s Law Guardian moved to suppress the written statement for the reason that the police officers had not complied with section 724 of the Family Court Act. That section sets forth the duties of a peace officer after taking a juvenile into custody as follows:
"(a) If a peace officer takes into custody under section seven hundred twenty-one or if a person is delivered to him under section seven hundred twenty-three, the peace officer shall immediately notify the parent or other person legally responsible for his care, or the person with whom he is domiciled, that he has been taken into custody.
"(b) After making every reasonable effort to give notice under paragraph (a), the peace officer shall
"(i) release the child to the custody of his parent or other *514 person legally responsible for his care upon the written promise, without security, of the person to whose custody the child is released that he will produce the child before the family court in that county at a time and place specified in writing; or
"(ii) forthwith and with all reasonable speed take the child directly, and without his first being taken to the police station house, to the family court located in the county in which the act occasioning the taking into custody allegedly was done, unless the peace officer determines that it is necessary to question the child, in which case he may take the child to a facility designated by the appropriate appellate division of the supreme court as a suitable place for the questioning of children and there question him for a reasonable period of time; or
"(iii) take the child to a place designated by rules of court as a juvenile detention facility for the reception of children.
"(c) In the absence of special circumstances, the peace officer shall release the child in accord with paragraph (b)(i).
"(d) In determining what is a 'reasonable period of time’ for questioning a child, the child’s age and the presence or absence of his parents or other person legally responsible for his care shall be included among the relevant considerations.”
The respondent’s Law Guardian argues that since the police officer did not notify the respondent’s parents or other person legally responsible for his care immediately after he was detained in the guidance counselor’s office, the subsequent confession of the respondent was rendered inadmissible. Clearly, without the confession, there is insufficient evidence to hold the respondent for the commission of the wrongful act.
The respondent relies upon Matter of Aaron D. (30 AD2d 183) where it was held that failure to comply with section 724 of the Family Court Act rendered a subsequent confession to a homicide inadmissible, and, in the absence of other evidence connecting the respondent with the homicide, the Family Court petition must be dismissed. The court stated that "Where the child is taken and detained in custody by police officers (see Family Ct. Act, §§ 721-729), the proper safeguarding of his privilege against self incrimination suggests that he should not be questioned until he and at least one of his parents are notified of his right to remain silent and of their right to counsel, with a further notification that counsel will *515 be appointed if they are unable to afford a defense.” (Matter of Aaron D., supra, p 185.)
A similar conclusion was reached by the Appellate Division in Matter of Emilio M. (44 AD2d 791). However, the Court of Appeals has not gone so far. In reversing the Appellate Division in Matter of Emilio M., the Court of Appeals holds that so long as there was "substantial compliance” with section 724 of the Family Court Act and no "prejudice or suggestion of significant prejudice to the respondent” literal compliance with section 724 would not be required. (Matter of Emilio M., 37 NY2d 173.) Note that the Court of Appeals held in People v Stephen J. B. (23 NY2d 611, 616) that not every minor is rendered as a matter of law incompetent to waive his constitutional rights in the absence of a parent or guardian.
In Matter of Emilio M., the mother was notified without undue delay following the boy’s being taken into custody. Before the arrival of the mother, he was given Miranda warnings, was questioned and readily admitted his participation in the homicide. That statement, however, was suppressed by the Family Court. Subsequent to the arrival of the mother, he was again given Miranda warnings and again confessed. The Court of Appeals held regarding the second confession that "since there is no evidence of willful or negligent disregard of the statutory requirements in this case and no evidence of inattention to such requirements as a pattern or practice, no sufficiently useful prophylactic purpose would be served in penalizing the police for failure to conform to the terms of the statute taken literally.” (Matter of Emilio M., 37 NY2d 173, 177.)
The issue presented here then is whether or not the failure of the police officer to make any effort whatsoever to notify the father or the stepmother renders the subsequent statement inadmissible. This court must conclude that it does. The facts of this case more nearly fit the facts of Matter of Aaron D. than they do the facts of Emilio M. In Aaron D., once the child was placed in custody, no call was made to the mother until after the boy had confessed. In Emilio M., a call was made to the parent before questioning commenced. A similar notification before questioning commenced occurred in Matter of William C. (66 Misc 2d 804) where the subsequent confession out of the presence of the parent was held admissible.
The rationale of these cases seems to be that the parent, if available, should at least be given the opportunity to object to *516 the questioning of the child before the questioning actually begins. Here no such opportunity was afforded to them. The willingness of the boy to confess cannot correct this failure to comply with the statute.
Since there is no independent evidence of guilt of the respondent other than the confession, the petition before the court must be dismissed.