◼ In the Matter of RAFAEL M., a Person Alleged to be a Juvenile Delinquent, Appellant.—Order, Family Court, Bronx County, dated January 31, 1977, adjudging respondent to be a juvenile delinquent and sentencing respondent to a term of imprisonment and committing him to Elmira Reception Center for a reformatory term not to exceed three years, is unanimously reversed, on the law, without costs and without disbursements, and the matter is remanded for a new fact-finding hearing and appropriate proceedings thereafter. On the fact-finding hearing, respondent was found guilty of acts which, if committed by an adult, would constitute at least manslaughter in the first degree. An important element of the evidence against respondent consisted of an arguably ambiguous memorandum handwritten by a detective and signed by respondent relating to his participation in the incident. The alleged ambiguity related to whether the "he" who is alleged to have stabbed the victim was respondent or his brother "Jimmy." The victim died of a gun shot wound and there is no evidence that respondent did the shooting. The victim was also stabbed by one or more of a group of youths. This stabbing alone would probably not have caused the victim's death but the shooting would have in a very brief time. A detective came to respondent's home and told his mother that they were investigating the killing and that they were taking respondent with them. The detectives

took respondent to the police station. After a while respondent's mother found out which police station they were at and came there. At about 11:00 P.M., the detectives took respondent to the community affairs room, a place designated by this court as suitable for questioning of a juvenile. The detective, in the presence of respondent's mother, gave the *Miranda* warnings in English. The respondent, then 15 years old, who apparently had little more than a third grade reading level, nodded his head affirmatively in response to the *Miranda* questions. Respondent's mother did not understand English; her language was Spanish. Although the detective was conversant with Spanish, he did not repeat the *Miranda* warnings in Spanish. He apparently did say to the mother in Spanish that he had told the respondent what his rights were and that respondent was willing to give a statement; he apparently also told the mother that respondent had a right to a lawyer. He did not tell the mother that respondent had a right to remain silent, or that, if the family could not afford a lawyer, one would be obtained for respondent and the lawyer would have a right to be present at the questioning. The mother said that she wanted her son to tell the truth. Respondent then gave his version to the detective who wrote out a summary of it in longhand in the third person, and respondent signed it. In *Matter of Aaron D.* (30 AD2d 183, 185), Mr. Justice Eager speaking for this court said: "Where the child is taken and detained in custody by police officers (see Family Ct. Act, §§ 721–729), the proper safeguarding of his privilege against self incrimination suggests that he should not be questioned until he and at least one of his parents are notified of his right to remain silent and of their right to counsel, with a further notification that counsel will be appointed if they are unable to afford a defense." This requirement was not complied with in view of the failure to translate the *Miranda* warnings into Spanish for the mother, particularly in this case in which respondent himself was so deficient in reading ability. While it is conceivable that the detective thought that respondent was not in custody at the time, it is clear that respondent and his mother must have assumed that they were not free to go. Thus the statement should not have been received. Objection is also made that although the original charge was the commission of acts which would constitute murder if performed by an adult, the court did not notify counsel that it intended to consider manslaughter in the first degree as a lesser included offense until after the attorney had completed his summation. In view of our determination as to the admissibility of respondent's statement, it is unnecessary for us to consider whether or not the provisions of CPL 320.20 (subd 5) requiring the court before summation to designate and state upon the record the counts upon which it will render a verdict are applicable to juvenile delinquency proceedings in the Family Court and whether, if applicable, respondent was prejudiced on the facts of this case by the failure of the court to comply with that provision. Concur—Lupiano, J. P., Silverman, Evans and Markewich, JJ.