In the Matter of MICHELET P. (ANONYMOUS), Respondent.
EUGENE GOLD, as District Attorney, Appellant.

Second Department, August 20, 1979

### APPEARANCES OF COUNSEL

*Eugene Gold, District Attorney (William Twaddle* of counsel), appellant *pro se.*

*William E. Hellerstein* and *Charles Schinitsky (John F. McGlynn* and *Joseph Opper* of counsel), for respondent.

### OPINION OF THE COURT

MANGANO, J.

The District Attorney appeals (by permission) from an order of the Family Court which, after a hearing, granted respondent's motion to suppress his statements. The order should be affirmed.

On January 3, 1978 at 8:15 A.M., Anita Brutus died as a result of being beaten with a pipe and stabbed with a knife.

Detective Albert Cachie was assigned to investigate the homicide. He learned that the respondent, a 15-year-old youth, and one Lionel Dors had been residing with the deceased since respondent's arrival from Haiti and that he, respondent, had no known relatives in the United States. His investigation further disclosed that contrary to the respondent's story, respondent and Dors had not attended school on January 3, 1978, the day of the incident. Detective Cachie, because of this, arranged for them to take a polygraph test on January 6, 1978 and on said date at approximately 10:00 A.M. he drove them to the police academy for that purpose. Apparently because of the suspects' young ages, Detective Paul Weidenbaum asked Dr. Gerard Brutus, son of the victim, to act as guardian for respondent and Dors. Immediately prior to taking the polygraph test Dors admitted to Detective Cachie that he and respondent had committed the crime. Thereafter, respondent was returned to the station house. Later that day, at approximately 5:35 P.M., respondent, in the presence of Dr. Brutus, gave Assistant District Attorney Steven Samuel a statement in which he admitted his complicity. Before respondent made his statement he was given his *Miranda* warnings and when asked whether he understood them, he responded

"Yeah." While giving the statement to Samuel, respondent conferred privately with Dr. Brutus in Creole and made an inculpatory statement to him. *Huntley* hearings were held as to the admissiblity of each statement and the Family Court determined that both statements should be suppressed. I agree that the statements should be suppressed, but not for the reason stated by Family Court.

## I. THE ADMISSIBILITY OF THE STATEMENT MADE TO ASSISTANT DISTRICT ATTORNEY SAMUEL

It is clear that from the time that Dors confessed, respondent was effectively in custody. In regard to the custody of youths less than 16 years of age, subdivision (a) of section 724 of the Family Court Act provides: "(a) If a peace officer takes into custody under section seven hundred twenty-one or if a person is delivered to him under section seven hundred twenty-three, the peace officer shall immediately notify the parent or other person legally responsible for his care, or the person with whom he is domiciled, that he has been taken into custody."

There is no question that respondent's parent or other person legally responsible for his care, or person with whom he was domiciled, was not notified and could not be notified. Respondent had no parent in this country. The person he had been domiciled with was dead and at the time of his arrest there was no person legally responsible for his care. The police, apparently aware of the absence of any of the parties enumerated in subdivision (a) of section 724 of the Family Court Act, sought to comply with its provisions by making Dr. Brutus respondent's guardian.

In *Matter of Brian P. T.* (58 AD2d 868) we reversed an adjudiciation of delinquency and stated (pp 868-869): "However, a more serious error permeated the hearing. Evidence was introduced that the appellant had appeared at police headquarters and had been interrogated by means of a polygraph procedure, the results of which had been properly suppressed prior to the hearing. Nevertheless, evidence was also introduced that following the polygraph procedure the appellant had given a statement to a detective, in the *absence* of his parents and without notice to them, in which he conceded intercourse with a unidentified female on the date and place in question, but claimed consent. Under these circumstances, the statement should have been suppressed

and not permitted to be introduced into evidence (see Family Ct Act, § 724; cf. *Matter of Aaron D.,* 30 AD2d 183; *Matter of William L.,* 29 AD2d 182). That the uncle of the appellant had accompanied him to the police headquarters and had been present at the time the appellant had given his statement to the detective does not cure the failure of the police to *notify* the appellant's parents or the *lack of their presence* at the time the statement had been made" (emphasis supplied).

As appears from *Matter of Brian P. T. (supra),* the requirement to notify a party legally responsible for the juvenile is strict. The emotional and intellectual immaturity of a juvenile creates an obvious need for the advice of a guardian and counsel at an interrogation from which charges of juvenile delinquency may ensue (see *Matter of William L.,* 29 AD2d 182, 184).

I think it almost self-evident that the fact that no one was legally responsible for respondent did not obviate his need for a guardian and did not mitigate the requirements of subdivision (a) of section 724 of the Family Court Act. The fact that none of the persons enumerated in subdivision (a) of section 724 was available for notification did not permit the police to fulfill its requirements by making Dr. Brutus respondent's guardian. The incapacity of the victim's son to act as guardian for the accused is apparent. Had the police followed the dictates of section 724 they would have taken respondent to the Family Court.

Subdivision (b) of section 724 of the Family Court Act provides:

"(b) After making every reasonable effort to give notice under paragraph (a), the peace officer shall

"(i) release the child to the custody of his parent or other person legally responsible for his care upon the written promise, without security, of the person to whose custody the child is released that he will produce the child before the family court in that county at a time and place specified in writing; or

"(ii) forthwith and with all reasonable speed take the child directly, and without his first being taken to the police station house, to the family court located in the county in which the act occasioning the taking into custody allegedly was done, unless the peace officer determines that it is necessary to question the child, in which case he may take the child to a facility designated by the appropriate appellate division of the

supreme court as a suitable place for the questioning of children and there question him for a reasonable period of time; or

"(iii) take the child to a place certified by the state division for youth as a juvenile detention facility for the reception of children."

Pursuant to paragraph (ii) of subdivision (b), when notice cannot be given pursuant to subdivision (a), the child should be brought to the Family Court. I note that at the time in issue, namely, Friday, before 5:00 P.M., the Family Court was open. The police could easily have brought respondent there so that a guardian less interested in the case than Dr. Brutus could have been appointed.

■ Accordingly, the police by appointing Dr. Brutus guardian denied respondent the protection provided by section 724 of the Family Court Act and the statement made to Samuel must be suppressed (see *Matter of Brian P. T.,* 58 AD2d 868, *supra; Matter of Kevin R.,* 42 AD2d 541; *Matter of Aaron D.,* 30 AD2d 183; *Matter of William L.,* 29 AD2d 182, *supra; Matter of Addison,* 20 AD2d 90, 92; contra, *Matter of Raphael A.,* 53 AD2d 592).

■ Since I find that section 724 of the Family Court Act was not complied with, the issue of whether respondent in a constitutional sense knowingly and voluntarily waived his rights (see *Miranda v Arizona,* 384 US 436) becomes academic. The failure to comply with section 724 makes the statement involuntary and inadmissible per se. In any event, "the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child" *(Matter of Gault,* 387 US 1, 41).

When a child's interests are being protected by a guardian the guardian must be given the required notification.

II. THE ADMISSIBILITY OF THE STATEMENT MADE TO DR. BRUTUS

■ On January 6, 1978 Detective Paul Weidenbaum drove Dr. Brutus to the "polygraph office". While transporting Dr.

Brutus to said office, Detective Weidenbaum told him that he wanted him to act as a guardian for respondent and Dors. At the polygraph office Dr. Brutus signed a form which stated that he was acting as guardian for the two boys. As indicated earlier, because of Dors' confession the polygraph test was not conducted and Dr. Brutus left. Later that day, Dr. Brutus returned to the station house and, at approximately 5:35 P.M., *respondent was* questioned by Assistant District Attorney Samuel in Dr. Brutus' presence. At the commencement of the questioning, respondent was asked if he wanted Dr. Brutus present and respondent's rights were explained to Dr. Brutus. The respondent and prosecutor then had the following discussion:

"Q. Is there anything you want to discuss with Dr. Brutus, at this time? Any questions you may have of him, or anything you want to talk to him about?

"A. I don't really want to.

"Q. Anything you want to ask him or discuss with him?

"A. Yeah, I want to talk. Ask him some questions."

Thereafter respondent and Dr. Brutus conferred privately in Creole. The District Attorney seeks to introduce the contents of this conversation in evidence. In my view the conversation should be suppressed as a privileged communication.

Because of the special problems that may arise with respect to a juvenile's privilege against self incrimination, the proper safeguarding of his privilege suggests that he and at least one of his parents be informed of his *Miranda* rights (see *Matter of Aaron D.,* 30 AD2d 183, 184-185, *supra).* The provisions of subdivision (a) of section 724 of the Family Court Act seek to safeguard those rights by requiring that a parent of a youth less than 16 years of age, or other person legally responsible for his care or the person with whom he is domiciled, be informed if he is taken into custody.

Although Dr. Brutus was an inappropriate choice for guardian, insofar as the People are concerned, he must be deemed a guardian. The case must be judged as if Dr. Brutus were in fact an appropriate guardian. The police and prosecutor fostered this role for Dr. Brutus and respondent's statement to Dr. Brutus was made at the prosecutor's behest. The aim of course in making Dr. Brutus a guardian was to comply with subdivision (a) of section 724. The issue that arises, therefore, is whether the confession of a child to a parent or guardian,

who is present as a result of notification by a peace officer pursuant to the provisions of subdivision (a) of section 724 of the Family Court Act, may be admitted in evidence over the objections of the child. I think not.

■ "Communications made in confidence are not protected purely because of their confidentiality, but may be kept secret only if premised upon a public policy expressed by statute or in furtherance of an overriding public concern of constitutional dimension" *(Perry v Fiumano,* 61 AD2d 512, 516).

In my view the policy inherent in section 724 of the Family Court Act mandates suppression of respondent's statement to Dr. Brutus. The prosecutor allowed and even encouraged Dr. Brutus and respondent to confer privately and to create an aura of confidential communication. I do not doubt that their purpose was compliance with subdivision (a) of section 724. However, allowing Dr. Brutus to testify about his conversation with respondent would defeat the very rights sought to be preserved by said statute.

■ The statutory purpose is to safeguard the rights of a child and, *inter alia,* to make certain that the right to remain silent and the right to counsel are knowingly and voluntarily waived. It is untenable that action taken due to the statute whose purpose is to safeguard those rights will result in respondent losing his rights. Dr. Brutus was present because of subdivision (a) of section 724 of the Family Court Act. His role vis-à-vis respondent was not unlike that of an attorney and his client. If Dr. Brutus can testify to his conversation with respondent it will mean that the very person charged with protecting the latter under subdivision (a) of section 724 will become the vehicle for waiving his rights. The statute clearly meant to prohibit such an outcome and, accordingly, I hold that a conversation between a child and his guardian who appears pursuant to the provisions of subdivision (a) of section 724 of the Family Court Act is privileged. Respondent had the right to assume that a statement confidentially made to one who was presented as his guardian would not be divulged.

A further consideration warranting the suppression of the statement made to Dr. Brutus is that to allow its admission in evidence would permit the People to do indirectly that which they could not do directly vis-à-vis respondent's statements to Samuel. Respondent's statement to Dr. Brutus resulted from his statement to Samuel and should be suppressed with it.

I note that in regard to a conversation between a child and a parent who is present because of notification pursuant to subdivision (a) of section 724, there are even stronger considerations warranting suppression. It is by now established that our Constitution protects the sanctity of the family *(Moore v East Cleveland,* 431 US 494, 503).

In *People v Doe* (61 AD2d 426) the issue presented was whether the State may compel the parents of a minor to testify against their wishes before a Grand Jury concerning admissions by the child which were made in confidence. While the court refused to create a testimonial privilege as such with respect to the parent-child relationship, it did hold that the parents may assert that the communication is privileged. In reaching that conclusion the court made the following observations *(supra,* pp 429, 432-433):

"Although the communication is not protected by a statutory privilege, we do not conclude that it may not be shielded from disclosure. It would be difficult to think of a situation which more strikingly embodies the intimate and confidential relationship which exists among family members than that in which a troubled young person, perhaps beset with remorse and guilt, turns for counsel and guidance to his mother and father. There is nothing more natural, more consistent with our concept of the parental role, than that a child may rely on his parents for help and advice. Shall it be said to those parents, 'Listen to your son at the risk of being compelled to testify about his confidences?' * * *

"Having established that the integrity of family relational interests is clearly entitled to constitutional protection, we turn to an examination of the nature of the interest asserted in the case before us. The role of the family, particularly that of the mother and father, in establishing a child's emotional stability, character and self-image is universally recognized. The erosion of this influence would have a profound effect on the individual child and on society as a whole. * * *

"If we accept the proposition that the fostering of a confidential parent-child relationship is necessary to the child's development of a positive system of values, and results in an ultimate good to society as a whole, there can be no doubt what the effect on that relationship would be if the State could compel parents to disclose information given to them in the context of that confidential setting. Surely the thought of the State forcing a mother and father to reveal their child's

alleged misdeeds, as confessed to them in private, to provide the basis for criminal charges is shocking to our sense of decency, fairness and propriety."

In my view similar considerations as well as the statutory purpose inherent in section 724 of the Family Court Act would mandate suppression of a statement made by a child to a parent when the parent's presence results from police notification pursuant to subdivision (a) of section 724 of the act.

The order of the Family Court suppressiong the statements should be affirmed.

HOPKINS, J. P., DAMIANI and O'CONNOR, JJ., concur.

Order of the Family Court, Kings County, dated July 20, 1978, upon an appeal by permission, affirmed, without costs or disbursements.