OPINION OF THE COURT
Daniel D. Leddy, Jr., J.
In this juvenile delinquency proceeding, the respondent is alleged to have committed acts which, if done by an adult, would constitute attempted burglary (Penal Law, §§ 110, 140.20), criminal trespass (Penal Law, § 140.10), criminal possession of a weapon (Penal Law, § 265.01), and unlawful possession of a weapon.
On March 21, 1980, the complainant observed an individual near the window of her home, trying to climb over a fence. She never saw the intruder’s face but concluded that he was a youth because of the girth of his back. She telephoned the police and gave a description of the individual’s clothing. Responding to that description, a police vehicle stopped the respondent several blocks away and brought him to the complainant’s house. The complainant asked the boy to turn around so that she could see his back. Thereupon, she identified him as the individual she had seen earlier.
The police arrested the boy and a consequent search of his person revealed a dagger with a five-inch blade. As a result of the foregoing, the instant petition was filed.
Prior to fact finding, the Law Guardian requested a hearing on the admissibility of the in-court identification of the boy. At the conclusion thereof, the court held that the showup was highly and unnecessarily suggestive and clearly conducive to a very substantial likelihood of irreparable misidentification. The motion to suppress the in-court identification was, therefore, granted. (Stovall v Denno, 388 US 293; People v Ballott, 20 NY2d 600.)
The Corporation Counsel conceded that, in light of the court’s ruling, he was unable to prove the allegations of attempted burglary and criminal trespass beyond a reasonable doubt. (Matter of Winship, 397 US 358.) Those charges were, therefore, dismissed.
The Law Guardian now moves to dismiss the remaining charges on the ground that they are a direct exploitation of the primary illegality. (Wong Sun v United States, 371 US 471.)
*1038 There is no question that the respondent was "seized” within the meaning of the Fourth Amendment when he was stopped on the street and forced into the police vehicle. As the United States Supreme Court pointed out in Terry v Ohio (392 US 1, 16) "It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized’ that person.” Unlike the situation in Terry, this was not a limited intrusion upon the freedom of the person allowing a balancing test, as enunciated in that decision to determine its validity. Rather, the young respondent was stopped, detained, and transported against his will. Regardless of what euphemistic term the police wish to employ to describe this action, its legal consequence is indistinguishable from a formal arrest. (Dunaway v New York, 442 US 200.) As such, its validity depends upon the time honored standard of probable cause, notwithstanding the fact that it may have occurred during an investigatory stage of the police action. (Davis v Mississippi, 394 US 721; Brown v Illinois, 422 US 590; Dunaway v New York, supra.) The standard of probable cause governing adult arrests is applicable to instances when children under the age of 16 are taken into custody without a warrant. (Family Ct Act, § 721.)
Clearly, the police did not have probable cause to arrest the respondent at the time of his seizure. This fact is conceded by the Corporation Counsel and implicitly recognized by the police themselves in taking the boy to the home of the complainant for the showup. This detention of the respondent, being based on less than probable cause, violated both section 721 of the Family Court Act and the Fourth and Fourteenth Amendments to the United States Constitution. (Davis v Mississippi, supra; Brown v Illinois, supra; Dunaway v New York, supra.)
Once the respondent was taken into custody, the police had an obligation to act in accordance with section 724 of the Family Court Act which sets forth, very specifically, the duties of a police officer upon taking a child into custody. Clearly, bringing the boy to the home of the complainant was not compliance with section 724. In Matter of Michelet P. (70 AD2d 68), the Appellate Division held that a failure to comply with section 724 of the Family Court Act rendered a subsequent statement made by the respondent inadmissible per se. (See, also, Matter of Aaron D., 30 AD2d 183.) While Michelet P. (supra) involved the taking of a statement from a juvenile, *1039 the use of identification procedures is closely allied police conduct in that it creates a substantial potential for abuse and undue prejudice. Thus, for example, the United States Supreme Court emphasized the similarity of identification techniques with police interrogation in contrast to a pro forma investigatory tool such as the taking of fingerprints. In Davis v Mississippi (supra, at p 727) the court emphasized that "fingerprinting is an inherently more reliable and effective crime-solving tool than eyewitness identifications or confessions and is not subject to such abuses as the improper line-up and the 'third degree’.”
This court now holds, therefore, that the per se exclusionary rule set forth in Matter of Michelet P. (supra), applies with equal force to identifications obtained as a consequence of a violation of section 724 of the Family Court Act.
Furthermore, a plain reading of section 724 indicates that there is no authority for the police to detain a juvenile for the purpose of obtaining identification evidence under any circumstances. This section carefully circumscribes the extent of permissible police intrusion upon the liberty of the child. When a child is taken into custody, the only investigatory action for which the child may be detained by the police is "questioning” and even that requires probable cause for the detention and special circumstances for the interrogation. (Family Ct Act, § 724, subd [c]; Dunaway v New York 442 US 200, supra.)
The statute reflects a commendable legislative determination to minimize the emotional trauma that may beset a child upon arrest. Thus, the period of permissible police detention is held to a minimum. The sole exception for "questioning” cannot and should not be judicially extended to include lineups, showups or other such investigatory techniques. The maxim expressio unius est exclusio alterius is an established principle of statutory construction and fully applies to this issue. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 240; Patrolmen’s Benevolent Assn. of City of N. Y. v City of New York, 41 NY2d 205; Matter of Kenneth J., 102 Misc 2d 415.)
The court must now decide whether, granting the constitutional and statutory infirmities of the police action herein, the weapon obtained during the subsequent search of the respondent must be suppressed.
At least insofar as the mandates of constitutional law are concerned, the test is " 'whether, granting establishment of *1040 the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.’ ” (Wong Sun v United States, 371 US 471, 488, supra.) Here the seizure, showup and search followed one upon the other, each a consequence of its predecessor. There was no significant event to interrupt the chain or attenuate the taint. (Brown v Illinois 422 US 590, supra.) Moreover, the first two links in the chain, i.e., the seizure and the identification were themselves infirmed. Thus, the poison reaching the product of the search was injected at the seizure and boostered at the showup. The contraband seized at the police station must, therefore, be suppressed as a matter of constitutional due process.
The same result is compelled by the violation of section 724 of the Family Court Act. Since the court in Matter of Michelet P. (70 AD2d 68, supra) set forth a per se exclusionary rule, it follows that no evidence derived from a violation of section 724 is admissible unless the taint is sufficiently attenuated within the meaning of Wong Sun v United States (supra, at p 488). To hold otherwise would undercut the holding in Matter of Michelet P. (supra) and imperil compliance with a critical statutory protection for children. As has already been established, there is no such attenuation here.
Accordingly, the motion of the Law Guardian to suppress the weapon is granted.