*144 OPINION OF THE COURT
John M. Hunt, J.
The petition charges the 13-year-old respondent in this proceeding with acts of burglary in the second degree (Penal Law § 140.25 [2]) and related offenses. The crime alleged netted money, jewelry, a Walkman and a Sega Saturn video game. It appears that the only available trial evidence that would tend to connect the respondent to this crime is his own confession. The respondent has moved to suppress that confession on grounds that it is both the fruit of an illegal arrest and the product of improper custodial interrogation. As will be seen, this court’s analysis of the respondent’s Dunaway motion covers familiar Fourth Amendment territory. However, the Huntley issues raised by the respondent are peculiar to delinquency proceedings and highlight the added procedural safeguards provided by the Family Court Act to juvenile suspects subjected to police questioning. They also underscore the need for a police department in a city as diverse as New York to have interpreters readily available to assist police officers during custodial interrogations.
PRETRIAL HEARING
At a combined Huntley /Dunaway hearing, the presentment agency called Detective Howard Landsburg who testified that he arrested the respondent and obtained his confession. Detective Landsburg’s testimony traced the path of his burglary investigation from his first conversations with the complainant through interviews of four neighbors to a phone tip that led to respondent’s arrest on the street and subsequent questioning in a police station. The information developed by the detective from the neighbors, all occupants of one apartment, showed that an individual with the same first and last name as the respondent, “Carlos P.”, was “around all the time” and had in fact been in the complainant’s building on the day of the burglary. Specifically, one of the neighbors quoted this individual as asking for a screwdriver with which to get into an unspecified apartment. Another of these neighbors said that she had seen this same individual in the building later that day with two other boys and that the three were playing with a video game similar to the one the complainant had reported stolen.
A phone tip to Detective Landsburg some two weeks after the burglary described the individual “Carlos P.” and reported that he was at that time on the street and around the corner from the complainant’s building. Following the tip, the detec *145 tive went to that location where he found the respondent matching the telephoned description and carrying a notebook with his true name “Carlos P.” on the front cover. When the respondent denied that his real name was “Carlos P.” and instead gave a false name, the detective arrested and searched him but recovered nothing. Thereupon, the detective took the respondent to the 52nd Precinct where he began to process the respondent’s arrest.
As required by Family Court Act § 305.2 (3), Detective Lands-burg called the respondent’s guardian, his grandmother, who arrived some three to four hours later. Upon her arrival, the Family Court Act imposed upon the detective the further responsibility of administering Miranda warnings to her as well as to the respondent prior to any questioning. The detective testified that he attempted to do so by reading each of the Miranda rights to them in English from a preprinted “Miranda” card.
The respondent’s grandmother was the only witness other than the detective to testify at the hearing. She testified through a Spanish interpreter that she does not speak nor understand English. The detective testified that he speaks only English and only spoke directly to the respondent who in turn acted as an interpreter for his grandmother by translating the detective’s reading of the Miranda warnings into Spanish. The detective testified that both the respondent and his grandmother appeared satisfied with this arrangement and that both appeared to understand him as a result. It was only after the respondent had completed translating the Miranda warnings for his grandmother that the detective obtained from him a purported waiver of his Miranda rights. Respondent’s full confession to the burglary followed shortly thereafter.
DISCUSSION
Where a respondent challenges evidence as the fruit of a Fourth Amendment violation, the ultimate burden of proving that violation rests upon the respondent (People v Berrios, 28 NY2d 361, 367 [1971]). Nonetheless, the presentment agency has the initial burden of going forward in such cases to establish the legality of the police conduct (People v Whitehurst, 25 NY2d 389, 390 [1969]; People v Malinsky, 15 NY2d 86, 91, n 2 [1965]).
“Probable cause” is the minimum requirement that renders an arrest “reasonable” under the Fourth Amendment (see, Dunaway v New York, 442 US 200 [1979]). It is axiomatic *146 that probable cause exists when “evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it.” (CPL 70.10 [2]; see, Brinegar v United States, 338 US 160 [1949]; and see, Carroll v United States, 267 US 132 [1925].) To determine whether the seizure of an individual resulting from a street encounter with the police is supported by probable cause, there must be some objective indicia of criminality that reasonably connects the police officer’s actions to the particular person who is the focus of their scrutiny. In this case, the court credits the detective’s testimony and finds that he had ample probable cause to arrest the respondent based on his interviews of the complainant and his neighbors. All of those interviewed provided firsthand accounts of either the elements of the crime itself or the respondent’s actions and criminal intentions while present in the complainant’s building on the day of the burglary. Respondent’s failure to give his true identity when confronted by the detective further reinforced those facts already known to the detective which served as probable cause for the respondent’s arrest. Thus, the statement subsequently obtained from the respondent at the precinct by Detective Landsburg was not tainted by any illegality connected to respondent’s arrest. Since there was no Fourth Amendment violation, the respondent’s motion to suppress his statement under Dunaway (supra) is denied. What remains is for this court to determine whether the detective’s custodial interrogation of the respondent complied both with Miranda as well as the additional requirements imposed by the Family Court Act.
Minors charged as juvenile delinquents are provided with unique safeguards that reflect a legislative concern that when very young people are arrested, they may be in need of parental guidance and support during police interrogation. Thus, a juvenile charged as a delinquent may only be questioned in a special detention room and if the parent is present, both must be advised of the latter’s constitutional rights (Family Ct Act § 305.2 [4], [7]; People v Susan H., 124 Misc 2d 341 [Sup Ct, Bronx County 1984]). As the Supreme Court recognized in In re Gault (387 US 1 [1967]), in the case of juveniles, special problems may arise with respect to the privilege against self-incrimination and some difference in technique may be required depending on the age of the child and the presence *147 and competence of parents and the participation of counsel. The Court stated that “[i]f counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair” (387 US, supra, at 55; see also, Matter of William L., 29 AD2d 182, 184 [2d Dept 1968]).
Although Detective Landsburg properly notified the respondent’s guardian as required by the Family Court Act, by administering the warnings to respondent’s guardian exclusively in English he failed to comply with the additional statutory mandate that once present, the parent or guardian must be properly notified of the minor’s rights (Family Ct Act § 305.2 [7]). Although the respondent’s guardian was admittedly present when the detective obtained the respondent’s statement, the presentment agency failed to prove beyond a reasonable doubt that she sufficiently understood the respondent’s Miranda rights so as to be able to provide the respondent with the adult assistance that he needed at the time (see, Matter of Kenneth C., 125 Misc 2d 227 [Fam Ct, Kings County 1984]).
In Kenneth C. (supra), one of four corespondents challenged the admissibility of two confessions due to a similar Miranda defect. Like this case, the respondent made his first oral confession to a detective after warnings were administered to the respondent and his mother in English despite the fact that the mother only spoke Spanish. However unlike this case, during a second taped interview, a detective interpreter was present to interpret the warnings to respondent’s mother into Spanish. Notwithstanding that translation however, respondent’s mother stated that she did not comprehend what was going on and told her son not to look to her for guidance. Addressing the taped interview first, the court found that it was a fatal flaw to have continued any further questioning since respondent’s mother appeared confused and was admittedly unable to provide her son with adequate parental assistance. In light of the language difficulty apparent during the second interview, the court further found that the interview taken two hours earlier without the benefit of a Spanish interpreter was similarly flawed. Consequently, both confessions were suppressed as a matter of law on the ground that they were not the product of a knowing, intelligent and voluntary waiver of respondent’s rights.
In the instant case, the court finds that Detective Landsburg similarly failed to comply with the Family Court Act when he *148 administered the warnings in English to respondent’s guardian despite her lack of comprehension. The fact that the respondent appeared to the officer to have interpreted the warnings into Spanish to the satisfaction of his grandmother did not attenuate the defect. Although respondent’s guardian did not express any disapproval of the procedure utilized by Detective Landsburg to “Mirandize” her grandson, the absence of a verbalized complaint, as in Kenneth C. (supra), did not mitigate respondent’s rights under the Family Court Act. When the detective relied on the respondent to translate his own Miranda warnings into Spanish, the detective delegated to the respondent a function that properly belonged to the police. The detective could not relieve himself of this responsibility since he could not know and did not testify that the respondent correctly translated any or all of the warnings for his guardian. Moreover, given the respondent’s age, the officer could not assume that he so understood and appreciated the nature of his constitutional rights that he could interpret and explain them correctly.
It is the opinion of this court that once the detective realized the language problem here, the detective should have immediately ceased administering the warnings until he obtained the services of a proper interpreter, for example, a bilingual fellow officer. To hold otherwise would undermine the statutory rights of accused juveniles whose relatives do not understand English and thereby ironically impose upon them the obligation of explaining to their adult relatives what their relatives should be explaining to them. Based on the foregoing, the court finds that the presentment agency failed to prove beyond a reasonable doubt that the respondent’s confession was obtained in compliance with both his rights under Miranda and his further right under the Family Court Act to have those Miranda warnings properly administered to his grandmother once she arrived at the precinct to advise him.
This decision reflects a ruling rendered from the Bench on June 19, 1997 which granted respondent’s motion to suppress. The petition was ultimately dismissed on July 10, 1998.