Nanette Dembitz, J.
The issue before the court is the admissibility of respondent’s confession to a homicide.
*749 The proceeding began with a juvenile delinquency petition by a policeman alleging that respondent, a youth of 14, on the night of May 24, 1968, acting in concert with two youths of 16, and while engaged in a robbery, willfully stabbed one Ortiz, a middle-aged man, with a knife; that Ortiz died several days later of the wounds inflicted; and that respondent’s acts, if performed by an adult, would constitute murder under subdivision 3 of section 125.25 of the Penal Law. Petitioner’s counsel opened the hearing by attempting to introduce respondent’s confession, and a voir dire hearing was held on its admissibility. On the basis of the petitioning policeman’s own testimony, the confession is hereby ruled to be inadmissible, under the due process guarantee of the State and Federal Constitutions. The evidence shows, in sum, that respondent’s confession was procured after his protracted incommunicado custody in a police station. The apparent good faith effort by the police for several hours to locate respondent’s mother or a substitute adviser for him, does not justify the interrogation under the circumstances herein, or render the confession admissible.
According to the testimony of petitioner, who was the arresting officer, he had futilely attempted 10 or 11 times to find respondent or his mother at their home between June 15 and 18. Finally, at 10 o’clock on the morning of June 18, petitioner found respondent alone at home; respondent said his mother had not been home the night before and that his father’s whereabouts were completely unknown. At the police station, to which respondent accompanied petitioner for questioning, respondent supplied an address at which his mother might be sought. Leaving respondent at the police station, petitioner unsuccessfully tried to contact the mother at that address, again at her home, and by telephone, until about 1:00 p.m. Petitioner was likewise unsuccessful in his effort to locate a priest who had on previous occasions served in loco parentis for respondent.
At about 3:30 in the afternoon, according to petitioner, still in the police station, he “ advised respondent of his rights ” with respect to an interrogation. Respondent said he would make a statement; at about 6:30, after an Assistant District Attorney similarly “ advised ” him, respondent signed the statement whose admissibility is here in issue. While petitioner did not formally arrest respondent until after the interrogation, he testified that he would not have permitted respondent to leave the police station at any time. About or after midnight, respondent was finally taken from the police station to the Juvenile Detention Center.
*750 1. Violation of Bug Process Guarantee.
Respondent’s confession was procured after he had been for at least eight hours in incommunicado police-dominated detention, no one except law enforcement officers being present during this entire period. Nor, apparently, was there any indication to respondent that he could expect any relief from his station house incarceration except through confession. The mere recital of his “ rights ” to a youth of 14, who was unattended by a guardian or counselor or friend, was insufficient to alleviate the coercive atmosphere borne of these circumstances.
A confession arising from “ fantasy, fright or despair ” (Matter of Gault, 387 U. S. 1, 55 [1967]) was a clear likelihood after respondent’s prolonged, isolated, police station custody. For a boy of 14, this detention had an intimidating, coercive and torturous aspect that is inappropriate to our system of justice ; that negates confidence in the trustworthiness of his confession ; and that renders it inadmissible under the due process guarantee.
It should be noted that this constitutional difficulty might have been avoided, had the police obeyed the mandates of section 724 of the Family Court Act that a juvenile can only be interrogated in a place “ designated * * * for the reception of children ” rather than a police station,[1] and only for a “ reasonable period of time ”. These provisions envisage the possibility of a youth’s interrogation in the absence of his parent or guardian, though such absence is one circumstance in the totality that determines whether the child was subject to intimidation, fright, and coercion. In view of respondent’s level of development, arrest sophistication, and unfortunate degree of independence from his mother, the absence of a parent or adviser might not have in itself invalidated his confession.
Respondent testified to his physical abuse by the police, and his mother testified to injuries on his head and face when he was brought to court the day after his arrest. Her testimony was flatly contradicted by the court’s probation intake officer, a social caseworker, whom the court called as a witness. Further, the respondent’s remarks to the probation officer during his intake interview cast doubt on the credibility of his testimony as to the conduct of the police.[2] However, even if respondent’s testimony was entirely false, his protracted incommuni *751 cado custody was so inherently coercive that it would violate the guarantee of due process of law of the Fourteenth Amendment of the Constitution to admit his confession into evidence. (See Miranda v. Arizona, 384 U. S. 436, 508 [1966, Hablan, J., dissenting]; Matter of Gregory W., 19 N Y 2d 55, 61-64 [1966]; Matter of Aaron D., 30 A D 2d 183,184 [1st Dept., 1968]; Matter of William L., 29 A D 2d 182, 184 [2d Dept., 1968], and cases there cited in the foregoing opinions.)
2. Application of Miranda Buie.
In view of this court’s conclusion as to the violation of due process, it need not here determine whether the rule of Miranda v. Arizona (384 TI. S. 436 [1966]) —that no one in custody may be interrogated unless first given a four-point warning,[3] — must be followed in juvenile delinquency proceedings. The appellate courts have not yet determined whether the Miranda protections of the privilege against self incrimination apply in their full scope to juveniles. In dealing in Matter of Gault with confessions by juveniles, the United States Supreme Court emphasized the traditional due process concern with the ‘1 ‘ distrust of confessions made in certain situations ’ * * * ”[4]— albeit it also mentioned Miranda.
This court’s hesitancy to rest on a simple holding that Miranda applies to juveniles,[5] arises from the fact that the fourfold warning rule seems intended to apply not only during detention in a police station or similar facility but to interrogation anywhere “ after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way ’ ’ (p. 444; see, also, pp. 467, 477, 478). Thus, the question of whether the Miranda principles should be transposed to juvenile delinquency proceedings presents this aspect: does the Supreme Court’s basic purpose in Miranda, of insuring the government’s respect for ‘ ‘ the dignity and integrity of its citizens * * * the inviolability of the human personality ” (p. 460), dictate *752 the application of the Miranda rule in all juvenile custodial situations.
If a youth is interrogated while in custody in the Juvenile Detention Center in New York City (in accordance with the Family Court Act’s special provisions for juveniles); if members of the social work staff, which directs the center, are present at the interrogation; if he is told that he is not required to answer and that what he says can be used against him ;[6] if he consents to questioning and is questioned for a brief period — let us say 15 minutes —■, the possibility of the evils to which the Supreme Court adverted, seems minimal.[7] It is likely, of course, that it is the fact of his custody which induces the respondent to answer; if he had spontaneously wished to give information, he could have sought out the police. (Cf. Harlan, J., dissenting in Miranda, p. 515.) But does this inducement under such circumstances involve an impermissible subjugation of the individual or loss of human dignity by the juvenile? The same query is posed if a juvenile is taken into custody in his own home in the presence of a parent, and —• if he consents to answer questions — briefly interrogated there; or perhaps if the juvenile is taken into custody in the daytime on a populated street (after a purse snatch, for example) and there questioned for a few minutes. The short duration of the interrogation is an objective precaution against phychological pressure to answer, nor is there in these custodial situations the privacy and secrecy which encourage third-degree methods and also frustrate their proof.
It may be noted that applying Miranda to on-the-spot interrogation in street arrests of juveniles, would lead to a paradoxical result, tending to appear unfair and discriminatory to the youths themselves. For under Miranda, a juvenile taken into custody on probable cause on the street ordinarily could not *753 there be questioned at all (since he would generally be incompetent, without his legal guardian, to waive his Miranda right to counsel), whereas under the New York “ stop and frisk” law[8] he could be stopped and questioned on less than probable cause — merely on “ reasonable suspicion ”.
While some questions are thus presented with respect to the applicability to juveniles of Miranda in its apparent full sweep,[9] the case at bar well illustrates the evil — stressed in Miranda —■ of secret, private, and police-dominated custody. Though ¡the court believes respondent’s testimony as to the use of third-degree methods in the police station was false or exaggerated, the possibility of even the partial truth of this testimony, and the impossibility of certainty as to the untruth of charges of police misconduct during incommunicado detention, taints our system of justice.
Petitioner’s counsel indicated that there may be other evidence in support of the petition in addition to respondent’s confession and the evidence that the man Ortiz had been the victim of a homicide. Accordingly, petitioner must be given an opportunity to request within 10 days that the case be re-calendared for a hearing.[10] In the event no such request is made, it is directed that the petition be dismissed at the expiration of ten days.

. See Matter of Aaron 13. (30 A D 2d 183,187 [1st Dept., 1968]).

. Section 735 of the Family Court Act, barring the admission at a fact-finding hearing of statements made during a preliminary conference, should not be construed to forbid the consideration of such statements in the instant voir dire hearing.

. JSFo answer to an interrogation by a person in custody is admissible unless he has been informed of his right to remain silent, that anything he says can be used against him, that he has a right to consult a lawyer before consenting to interrogation and during it, and that a lawyer will be appointed for him if he desires but cannot afford counsel (pp. 467-473).

. 387 U. S. 1, 55 (1967). In contrast, in Miranda the trustworthiness of a confession is not a primary consideration (see mention of this factor at p. 455, note 24 and p. 464, note 33). (And, see, Johnson v. New Jersey, 384 U. S. 719, 731 [1966].)

. If Miranda applies, it is clear that petitioner has not discharged the “ heavy burden ” of showing that respondent understandingly and expressly waived his rights thereunder, especially his right to counsel (see pp. 475-476).

. Validated in its basic principle in Terry v. Ohio (392 U. S. 1 [1968]). While the court did not pass on the admissibility of statements made in a stop-and-frisk interrogation, it seems clear that they would not be barred because of the lack of the Miranda warnings. The exclusionary rule is primarily for the purpose of deterring illegal police practices '(see Mapp v. Ohio, 367 U. S. 643, 655-657, [1961]; here the court has approved the practice).

. These cautions aim to preserve dignity and integrity for a guilty person who otherwise would ¡be forced to choose between admitting guilt or lying, or who might unwittingly view the interrogator as a friendly confidante. Insofar as these warnings are intended to relieve a felt psychological dilemma, it would seem that the juvenile could make the choice of whether to answer without the advice of counsel.
Miranda’s concern with the inequality between the poor without counsel and the affluent with retained counsel (pp. 471-474), has much less pertinence in the juvenile than the adult world.

. Matter of Gregory (19 N Y 2d 55, 60 [1966]), in which youths in the center (then known as “Youth House”) were improperly questioned by a detective, reflects an extraordinary deviation and a period of less attention than at present to juvenile rights. While the then-administration of the facility was remiss in permitting such questioning, the advantage of the site of the interrogation was that non-police personnel were at least available to testify as to its circumstances, (cf. Miranda, p. 461.)

. Despite the Supreme 'Count’s broad definition of “ custodial interrogation ”, the Miranda defendants had in fact all been in incommunicado confinement in police stations or interrogation rooms (pp. 445, 456-457, 493-498).

. It may be noted that respondent is presently in placement in a State Training School, having been on parole at the time of the events alleged in the petition.