OPINION OF THE COURT
Martin B. Stecher, J.
The defendant, a juvenile of the age of 15 years accused of rape and attempted murder, seeks to suppress his statement made by him to law enforcement authorities.
After an evidentiary hearing, I make the following findings. On December 3, 1981, at about 2:30 p.m. at premises 90 Avenue D, New York City, a woman was thrown from the roof or a window in that building falling to the ground outside. The property was a New York City Housing Authority building. The New York City Housing Authority police officers receiving a radio communication of what appeared to be a crime, rushed to the scene. The detective (now sergeant) Witkowich arrived at the building a few minutes after the occurrence in time to see the victim being removed to an ambulance. He observed that she not *615 only sustained the injuries from a fall but was told that she had several stab wounds and he was able to see her bleeding from those wounds.
Quite logically, Detective Witkowich and his partners began to investigate the line of apartments over the site where the victim was found. While on the 12th floor he received a radio communication to look on the 7th floor. He and his partners went to the 7th floor and went to the apartment in the B line, the line before which the victim’s body was found.
It is undisputed by the defendant that the police officers rang the bell and that he, Robert King, opened the door.
Witkowich observed blood on King’s clothing and blood on the walls in the vicinity of the open door. The bathroom which contained a considerable amount of blood was, according to King, but seven feet away.
The officers immediately took King into custody.
I find there was probable cause to arrest. The officers were aware of a crime having been committed, certainly from the stab wounds if not from the act of defenestration. It was proper for them to make inquiry at any apartment in the line above which the victim was found and upon observing both the bloody occupant and the apartment, there was probable cause to arrest.
The officer thereupon drove King to the hospital to try to obtain an identification by the victim. Because of her condition the effort was unsuccessful. Witkowich and his partners were now joined by Detective McClane of the Housing Authority police. They informed the defendant of his Miranda rights and began to question him. The police officers were not aware of the fact that King was but 15 years old. King today is approximately 6 feet, 4 inches tall and, according to Sergeant Witkowich, whose testimony I credit, King was about the same height at the time he was taken into custody.
At first King denied his involvement. Within a few minutes, however, he confessed, whereupon he was taken to the 9th Precinct station house of the New York City police. It was only upon taking his pedigree on entry into the precinct house that his age was learned.
*616 The police officers soon discovered that King’s mother in whose apartment he resided was out of the State in company with her two youngest children. The defendant and his next youngest sibling were allowed to remain in the apartment alone presumably under the care of their grandmother. Mrs. Brown, however, did not reside in this Avenue D apartment but she appears to be the person who assumed responsibility for King and his younger brother. The police telephoned, however, to another daughter of Mrs. Brown, one Ms. Lois Brown, the aunt of the defendant. Lois Brown communicated with her mother and the two of them, accompanied, by Lois’ adult brother, all went to the station house.
At the 9th Precinct station house, the defendant refused to see his grandmother. She was an ordained minister having a church of her own and apparently he was ashamed to see her. He was, however, willing to see his aunt Lois. Mrs. Margaret Brown, the grandmother, designated Lois to act in Margaret’s place. The police officers had already informed the ladies that young King had confessed to the crime, that they wished to take a statement from him and that they could not do so in the absence of a person who was a guardian. It was for this purpose that Margaret Brown designated Lois Brown. To this point, neither of the ladies was informed of the defendant’s constitutional rights generally known as the Miranda rights.
The police officers escorted Lois Brown to an investigation room to which the defendant was brought. He and his aunt conferred for a while before any questioning began although a police officer was in constant attendance. The defendant was not handcuffed or restrained other than by the circumstances of being in the police station.
The police informed the defendant and his aunt of the defendant’s rights to remain silent, to have counsel, etc. The defendant thereupon answered the police questioners thereby inculpating himself. There was no refusal to answer nor was there a demand for counsel.
The police officers recessed their interrogation so that Detective McClane could type up a statement for the defendant’s signature. At this point, both Lois Brown and Margaret Brown were together in the police station. Mar *617 garet Brown had been joined by another man. At this point, she asked the police officer whether it was proper to obtain a statement from King in the absence of an attorney. The officer asked, “Do you want an attorney?” Her response was that she did. The police officer immediately instructed Lois Brown to go back to the room where the questioning had taken place and tell his fellow officers that a request had been made for an attorney and that no further questions were to be asked. No further effort was made to obtain a signed statement from King.
The police testified, as indicated above, that they had no reason to believe that the defendant was but 15 years of age. Detective McClane thought he was about 20; indeed, his appearance justified such a conclusion. I hold, therefore, that the failure to notify Kings’ parent or guardian promptly upon his arrest was an act of inadvertence. The District Attorney has consented, however, to the suppression of the initial oral statement taken at the hospital and the question, therefore, arises: Is the subsequent statement taken in the presence of Lois Brown so tainted as to warrant the suppression of the second statement?
Here, as in other areas of criminal law, suppression has as its purpose a check on law enforcement officials and is intended to inhibit them from violating the rights of defendants. No such purpose would be served in this case by suppressing the second statement (Matter of Emilio M., 37 NY2d 173; People v Coker, 103 Misc 2d 703).
We turn then to the circumstances under which the second statement was obtained. CPL 140.20 (subd 6) requires police officers arresting a juvenile offender without a warrant to notify immediately “the parent or other person legally responsible for his care or the person with whom he is domiciled, that the juvenile offender has been arrested, and the location of the facility where he is being detained.” A similar requirement is to be found in section 724 of the Family Court Act. Engrafted on to these statutes has been the concept that not only must the parent or guardian be notified but that there is an absence of due process if questioning takes place out of the presence of such an adult (Matter of Aaron D., 30 AD2d 183; see Matter of Gault, 387 US 1).
*618 The obligation to notify the parent or guardian “immediately” was discharged here for an effort was made to notify both the grandmother and the aunt immediately upon the discovery by the police of the age of the defendant. The fact is that both the grandmother and the aunt arrived at the station house within 4V2 to 5 hours after the occurrence of the crime itself. I observed further that no effort was made to interrogate the defendant from the time of the discovery of his age until these relatives appeared.
For the purposes of the statute (CPL 140.20, subd 6), the defendant’s grandmother was the “person legally responsible for his care”. Yet the interrogation did not take place in her presence but in the presence of her daughter Lois, a mature woman, 27 years of age who holds a responsible position and has demonstrated concern for the defendant. It is acknowledged by the defendant that he had not agreed to see his grandmother and on this basis the grandmother designated Lois Brown, the aunt, to act as her surrogate during the interrogation. There can be no claim here that the interrogation should not have taken place outside the presence of the grandmother (see, however, Matter of Brian P. T., 58 AD2d 868; Matter of Lawrence W., 77 AD2d 570).
Finally, the intention of the police officers to hold this young man for the purpose of further interrogating him does not run afoul of the law. The police are entitled to a reasonable period of time for investigation (CPL 140.20, subd 1) and the lapse of five hours here between the commission of the crime and the conclusion of the interrogation was not unreasonable.
The motion to suppress the first statement given in the hospital is granted. The motion to suppress the second statement given at the police station is denied.