OPINION OF THE COURT
Eugene P. Bambrick, J.
Can a 14 year old waive his constitutional rights without the consent of his parents or guardian?
This recurring question which has confronted courts throughout the Nation has evaded permanent resolution *869 and is at the heart of the defendant’s motion to suppress certain statements attributed to him.
The defendant herein is charged with robbery in the first degree, two counts of robbery in the second degree, assault in the second degree, and criminal possession of a weapon in the fourth degree. Upon motion of the defendant, the court held a preliminary hearing (a) to determine whether the identification procedure was improper and whether such procedure tainted any subsequent identification which would warrant the suppression of any identification testimony (United States v Wade, 388 US 218); and (b) to determine the admissibility of inculpatory statements made by the defendant (People v Huntley, 15 NY2d 72).
The People called Police Officer Jeffrey Hoerte and the complainant Germania Taveras to testify at the hearing. From the credible testimony of the witnesses, the following are the findings of fact:
FINDINGS OF FACT
On April 30, 1982, at about 10:00 p.m., in the vicinity of Cypress and Cody Avenues, three men robbed the complainant of her pocketbook, during which time one of the men repeatedly hit her with a pipe. It appears that when she screamed, a man from a van came to her aid, and two of the perpetrators ran away. Whereupon the complainant picked up a beer bottle and broke it, and was able to detain the defendant, with the assistance of neighborhood people, until the police arrived at the scene. The complainant pointed out the defendant to Police Officer Hoerte as the one who hit her with a pipe, and he was placed under arrest. Less than two minutes after the arrest, Police Officer Hoerte requested the complainant to come over to the police radio car, where the defendant was sitting in the back, and asked whether he was the man who robbed her. She responded in the affirmative. The defendant was also identified by the complainant in court at the hearing as the one who hit her with a pipe.
On the way to the 104th Precinct, Police Officer Hoerte ascertained that the defendant was 14 years old. They arrived at the precinct at about 10:15 p.m., and after giving his name, address and age at the desk, the defendant was *870 then taken to the juvenile detention questioning room. According to Police Officer Hoerte, he first attempted to phone the defendant’s parents at 10:45 p.m., and since there was no answer, the defendant attempted to phone five minutes later, to no avail. At 11:00 p.m., the officer attempted again to phone the defendant’s parents with no success. No effort was made to reach any other relative. According to Officer Hoerte, an effort was made to contact the 83rd Precinct, wherein the defendant resides, and have them notify the defendant’s parents by patrol car. However, the statements sought to be suppressed were already made by the time the 83rd Precinct reported back the results of their efforts.
At 11:00 p.m. the defendant was read the Miranda warnings (Miranda v Arizona, 384 US 436), and according to Officer Hoerte, the defendant answered yes as to whether he „ understood each warning, including the last question: “Now that I have advised you of your rights, are you willing to answer questions without an attorney present?” From the officer’s testimony, it is unclear at what precise moment the defendant made his first statement. It appears that following the Miranda warnings, pedigree questions were asked. Shortly thereafter, as the officer was filling out paperwork, the defendant made the following statement: “The only reasons he had gone along in this venture was that the two other perpetrators who were with him had stated they would physically injure him * * * they would beat him up and cause injury to him if he didn’t participate in the robbery”. Although the officer alleges that the first statement was not made in response to a question, the following is the transcription of the relevant testimony of the officer, which more fully deals with that issue:
“Q. And after you and he, he being my client, were unable to contact his parents, you then read him his rights and he made that statement?
“A. That’s correct.
“The Court: Did he make the statement in response to a question or did he make it without?
“The Witness: No, there was no direct question put to him.
*871 “Q. Well, when you say no direct question, my client was just sitting there and did he just blurt out T did it with these two other kids because they made me do it because they said they would beat me up’, or did you ask him what happened or what was involved?
“A. I said to him — I said the two other guys that were with you, the exact words I don’t remember, something to the effect that they’re going to walk away from this and, you know, you’re going to be left holding the bag and I said it would be to his benefit to let me know who these other guys were”.
According to Officer Hoerte, approximately half an hour later, at 11:30 p.m., a second statement was made by the defendant, giving the names and addresses of the two other perpetrators.
It appears that attempts were made by the defendant to contact his parents, not only before 11:00 p.m. but subsequently on several other occasions, without success.
WADE ISSUE
The defendant moves to suppress the identification testimony alleging that the circumstances surrounding the “showup” identification of the complaining witness were impermissibly suggestive, and that any subsequent identification would be tainted. This court finds to the contrary, that the prompt showup identification by the complainant shortly after the criminal event accorded with desirable police practice. (See People v Logan, 25 NY2d 184, 188; People v Huggler, 50 AD2d 471; also see United States v Sanchez, 422 F2d 1198, 1200; Bates v United States, 405 F2d 1104.) Furthermore, as stated in People v Brnja (70 AD2d 17, 24, affd 50 NY2d 366), it has been held that not only is it not improper for the police to return a freshly apprehended suspect to the scene of the crime for identification by one who has seen the culprit minutes before, but that such procedure in certain instances “‘“if anything promotes fairness, by assuring reliability” ’ ”. (Russell v United States, 408 F2d 1280, 1284, cert den 395 US 928.) The Brnja court explains (p 24): “Although the Wade-Gilbert rules apply to prearraignment viewing, speedy viewings on the scene, benefit both law enforcement authorities and the defendant. If the accused is identified as *872 the culprit, the witness’ recollection will be as fresh and reliable as his capacity and the situation permit. If he is not identified, he may then be released with a minimum of delay (People v Blake, 35 NY2d 331; People v Logan, 25 NY2d 184, 194, supra).”
Accordingly, the court finds that the showup identification by the complainant Germania Taveras was properly made and should not be suppressed.
Even if the court had found that the showup identification should be suppressed, it would not suppress the complainant’s in-court identification because she had an independent basis for such identification. At the time of the crime she had ample opportunity to view the defendant. (See Neil v Biggers, 409 US 188, 199; also see People v Ballott, 20 NY2d 600.)
For all of the foregoing reasons, the court finds that the motion to suppress the identification of defendant made by Germania Taveras is denied in all respects.
HUNTLEY ISSUE
The defendant contends that since Police Officer Hoerte failed to comply with the requirements of section 724 of the Family Court Act, and CPL 140.20 (subd 6), both statements made by the defendant must be suppressed. According to the defendant, the courts have consistently held that section 724 of the Family Court Act mandates strict compliance, and that failure to so comply causes any evidence obtained as a direct result thereof to be inadmissible per se. (Matter of Michelet P., 70 AD2d 68; Matter of Brian P. T., 58 AD2d 868.)
In opposition to the motion to suppress the People argue: (a) Police Officer Hoerte complied with the requirements of section 724 of the Family Court Act and CPL 140.20 (subd 6); and (b) the presence or absence of parents during the police questioning of a defendant under 16 years of age is only one of the factors to be considered in determining the voluntariness of a defendant’s statement. (People v Taylor, 16 NY2d 1038; People v Hocking, 15 NY2d 973.)
JUVENILE WAIVER OF MIRANDA RIGHTS:
“totality” versus “per se” approach
*873 The issue raised by this motion can best be summarized by the words of Thomas Grisso in his incisive article: Juveniles’ Capacities to Waive Miranda Rights: An Empirical Analysis (68 Cal L Rev 1134, 1134-1135):
“The validity of Miranda rights waivers by juveniles * * .* is a perplexing, significant issue.
“Recognizing that waivers by juveniles merit special consideration and scrutiny not accorded those by adults, courts have generally followed one of two approaches * * * The first approach, adopted by the majority of jurisdictions, mandates a consideration of the ‘totality of the circumstances’ in determining whether a juvenile’s waiver of his Miranda rights was knowingly, intelligently, and voluntarily made * * *
“The second approach, developed in case law and legal commentary, greatly reduces the court’s discretion in determining whether the waiver was in fact voluntarily made. It calls for the application of per se exclusionary rules whenever the juvenile has not been afforded specific assistance. The approach requires the presence of an ‘interested adult’ — parent, guardian, or attorney — to advise the juvenile of his rights and of the implications of making a waiver. Waivers made without this assistance are deemed invalid. Unlike the ‘totality’ approach, the ‘per se’ approach automatically excludes a waiver based on the absence of certain circumstances — i.e., on the absence of the requisite procedural safeguards.” (Also see Grisso, Juveniles’ Waiver of Rights.)
A study of New York case law will render an expression, and perhaps a wavering, of both schools.
THE NEW YORK TREATMENT OF JUVENILE WAIVER
Before Miranda v Arizona (384 US 436, supra), the Appellate Division, Fourth Department, held in Matter of Dennis (20 AD2d 86, 87) that a confession obtained from a 15 year old in violation of section 724 of the Family Court Act was inadmissible: “Section 724 was violated for appellant was taken into custody without a warrant and his mother, the person legally responsible for his care and with whom he was domiciled, was not immediately notified”. The Dennis court (pp 88-89) cited Gallegos v Colorado (370 *874 US 49) for the proposition that: “The failure to permit him to see his parents, a lawyer or other friendly adult, said the Supreme Court, was a violation of due process guaranteed under the Fourteenth Amendment to the United States Constitution.”
The Court of Appeals in People v Hocking (15 NY2d 973, 974-975, supra) seemed to shift towards the “totality” rule: “The fact that the police refused a request by the defendant’s father to see and speak with the defendant during the period he was being questioned by the police at the station house, while not in and of itself sufficient reason or basis for excluding the defendant’s confession, may, of course, upon the hearing we are directing, be considered, along with all the other circumstances of the interrogation, in passing upon the voluntariness of the defendant’s statements.”
In People v Taylor (16 NY2d 1038, 1039-1040, supra), the Court of Appeals adhered to the Hocking rule: “[W]e are required to hold that, in the present case, defendant’s confession was not made inadmissible solely because his family was refused access to him but that this fact would be germane on the issue of its voluntary nature.”
However, in Matter of Williams (49 Misc 2d 154, 163), the record is set straight to indicate that the Hocking (supra) and Taylor (supra) decisions involved the admissibility of confessions taken from adults after denial of access to their family, and, therefore, were not binding precedents in relation to juvenile confessions. The Williams case (p 164) involved a 15 year old and clearly enunciated the incapacity of a juvenile to waive the right to consult with his parents: “In the case of a child, however, there is still another difference, for while there is no constitutional right, there is a statutory right (Family Ct. Act, § 724), not given to adults, which a child has to have his parents notified of his having been taken into custody, presumably so that they may give him whatever assistance their presence and counsel may afford. Moreover, for the reasons expressed in Haley v. Ohio (332 U. S. 596, 601, supra) and Gallegos v. Colorado (370 U. S. 49, 54, supra), previously alluded to, the decision to exercise this right or to waive it does not rest with the child.”
*875 The Williams court cogently argues (supra, pp 156-157) that a juvenile “by reason of his immaturity, stands in much greater need of protection from unwarranted police interrogation than an adult.”
In Matter of Doe (52 Misc 2d 22) and in Matter of Gregory W. (19 NY2d 55), the courts emphasized the juvenile’s constitutional right to due process.
When a 12-year-old schoolboy was questioned by a police officer in the presence of a teacher and school principal in the principal’s office, without any prior notification to the boy’s parents, the court in Matter of Knox (53 Misc 2d 889, 890-891) unflinchingly set forth the “per se” rule as follows: “Did the violation of the statute preclude the use of the confession * * * This court holds that denying the Knox boy the counsel and protection of his parent made his statements of January 2,1967 inadmissible whether or not they were made voluntarily.”
The Appellate Division, Second Department, in Matter of William L. (29 AD2d 182), held that not only a child but his mother, too, must be advised of Miranda rights prior to custodial interrogation. Based on this decision, a critique was written of the per se implications (32 Albany L Rev 667, 671) as follows: “With the addition of a third party in juvenile cases, the office must first, locate at least one of the parents and then appraise him of his child’s rights; next, make sure that the parent as well as the child understands and then, if both parent and child agree to talk, question the juvenile. This is too great a burden on police officers in the midst of investigating numerous juvenile crimes”.
The New York courts, the author implied (p 672), would be heading in the right direction “If, however, rather than holding the advice to parents to be a procedural necessity, the court merely held that failure to transmit the Miranda warnings to the parents is one aspect to be considered in the totality of the circumstances”.
That direction again proved evasive. For in Matter of Aaron D. (30 AD2d 183, 185-186), the per se rule almost seemed entrenched:
“Where the child is taken and detained in custody by police officers (see Family Ct. Act, §§ 721-729), the proper *876 safeguarding of his privilege against self incrimination suggests that he should not be questioned until he and at least one of his parents are notified of his right to remain silent and of their right to counsel, with a further notification that counsel will be appointed if they are unable to afford a defense * * *
“Under the circumstances, the cautioning of the juvenile and the taking of his statements at the station house, in the absence of his mother and counsel, do not satisfy due process requirements. The procedures of the officers, as mere token observance of such requirements, were not reasonably calculated to secure the voluntariness and the validity of the statements.”
At that point the Court of Appeals, in People v Stephen J.B. (23 NY2d 611, 616), appeared to reverse the per se trend with the following: “We cannot accept the suggestion that every minor is as a matter of law incompetent to waive his constitutional rights to remain silent and to an attorney unless the waiver is consented to by a parent or guardian who has himself been advised of the minor’s rights.”
However, this holding admittedly applied to a 16 year old who no longer had the protection of section 724 of the Family Court Act. Furthermore, in United States ex rel. Stephen J.B. v Shelly (430 F2d 215), the United States Court of Appeals modified this State Court of Appeals ruling and demonstrated the uncertainty in application of the “totality” rule, which in the State courts had been the basis of the voluntary waiver finding, and in the Federal court was the basis for the modification which found that there was not a genuine waiver.
Despite the modification, the “totality” rule of the Stephen J.B. case (supra) was followed in Matter of William C. (66 Misc 2d 804), which held that the presence of a guardian at the questioning of youths in police custody is not an absolute requirement, but is a factor to be considered in determining whether admissions were properly obtained from them.
Just when the pendulum seemed to favor the “totality” rule, case law indicated a shift in the “per se” direction. *877 (See Matter of Kevin R., 42 AD2d 541.) In People v Townsend (33 NY2d 37, 41-42), the Court of Appeals stated:
“[I]t is impermissible for the police to use a confession, even if it be otherwise voluntary, obtained from a 17-year-old defendant when, in the course of extracting such confession, they have sealed off the most likely avenue by which the assistance of counsel may reach him by means of deception and trickery * * *
“The courts should not accept a confession obtained by the police through tactics calculated to make certain that defendant’s parents will not take any steps to get him a lawyer.”
Nevertheless, in Matter of Emilio M. (37 NY2d 173), while no call was made until arrival at the station house, the call was made without undue delay, and in Matter of Raphael A. (53 AD2d 592), messages were left and the police waited two and one-half hours for Raphael’s mother to appear, it was held that section 724 of the Family Court Act allows questioning of juveniles after every reasonable effort to notify their parents has been made.
Courts demanded full compliance with due process requirements of juveniles (Matter of Matthew F., 87 Misc 2d 644); and in Matter of Brian P. T. (58 AD2d 868, 869, supra), the per se doctrine dominated: “in the absence of his parents and without notice to them * * * Under these circumstances, the statement should have been suppressed and not permitted to be introduced into evidence”.
Although the “totality” rule appears again in Matter of Hector G (89 Misc 2d 1081), its reign is short-lived. In Matter of Penn (92 Misc 2d 1043), the court declares that proper safeguarding of the child’s privilege against self incrimination suggests that a child should not be questioned until at least one of his parents has been notified and is present, and both the child and parent are advised of the child’s right to remain silent and of their right to counsel.
In People v Kocik (63 AD2d 230) and People v Bevilacqua (45 NY2d 508), the interrogation of the defendant during which neither the mother nor the attorney was present was ruled inadmissible.
*878 The Appellate Division, Second Department, in Matter of Michelet P. (70 AD2d 68, 71, 72, supra) dealt with a 15 year old who made inculpatory statements during the course of police questioning in a murder investigation, and clearly enunciated the “per se” doctrine:
“As appears from Matter of Brian P. T. (supra), the requirement to notify a party legally responsible for the juvenile is strict. The emotional and intellectual immaturity of a juvenile creates an obvious need for the advice of a guardian and counsel at an interrogation from which charges of juvenile delinquency may ensue (see Matter of William L., 29 AD2d 182, 184).”
“Since I find that section 724 of the Family Court Act was not complied with, the issue of whether respondent in a constitutional sense knowingly and voluntarily waived his rights (see Miranda v Arizona, 384 US 436) becomes academic. The failure to comply with section 724 makes the statement involuntary and inadmissible per se. In any event, ‘the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile’s freedom is curtailed, the child and his parents must be notified of the child’s right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child’ (Matter of Gault, 387 US 1, 41).” (Emphasis supplied.)
The per se rule was reiterated in People v Coker (103 Misc 2d 703), which involved a 15-year-old juvenile offender, wherein the court applied both CPL 140.20 (subd 6) and section 724 of the Family Court Act as the statutory authority requiring the notification of the child’s parents. The conclusions of the Coker court (pp 711-712) are particularly applicable to the instant matter before this court: “While the Court is of the opinion that the statute sets up a per se rule, that is, that the person responsible for the child must be contacted, it is unnecessary to reach that far in arriving at the decision herein. I find that the attempts at notification were insufficient to reach the level of ‘every reasonable effort to give notice’ (Family Ct Act, § 724, subd [b], par [i]). Merely receiving busy signals in *879 response to telephone calls was not a sufficient excuse for failure to contact the mother. Although there was some testimony of an attempt by officers from the local precinct in Brooklyn to contact her, it is the court’s opinion that these attempts were feeble and insufficient.”
It appears that New York has adhered to the per se rule (see People v Rivera, 78 AD2d 556; People v Martin W., 105 Misc 2d 424; Matter of Martin S., 104 Misc 2d 1036; also see Matter of Karen XX., 85 AD2d 773; 1 Cohen, Family Trial Advocacy [App Div, 1st. Dept (1982)], pp 234-236) despite recent abdications of this approach in various jurisdictions throughout the country in response to the United States Supreme Court decision, Fare v Michael C. (442 US 707). (See United States ex rel. Riley v Franzen, 653 F2d 1153; People v Level, 172 Cal Rptr 904.)
This court is well aware of the plethora of literature specifically dealing with the United States Supreme Court’s position on the issue at hand: on the implications of Matter of Gault (387 US 1, supra), for example, see Waiver in Juvenile Court (68 Col L Rev 1149-1167), and Interrogation of Juveniles: Right to a Parent’s Presence (77 Dickinson L Rev 543-560); and with respect to Fare v Michael C. (442 US 707, supra), inter alia, also see Invocation of Miranda Rights: A Question of Fact?: Fare v Michael C. (21 Boston Coll L Rev 922-947; Fare v Michael C.: Supreme Court Once Again Narrowly Construed Miranda (26 Loyola L Rev 190-199), Fare v Michael C.: Juveniles and in Custodial Interrogations (7 Pepperdine L Rev 953-963), and Constitutional Law: Invocation and Waiver of Fifth Amendment Rights by Juveniles (32 Univ Fla L Rev 356-368). However, for the purposes of this case, the court has traced the development of the New York “per se” exclusionary rule in relation to a violation of a juvenile’s statutory rights (Family Ct Act, § 724; CPL 140.20, subd 6), without having to specifically resolve questions relating to a juvenile’s constitutional rights. Suffice it to comment that the’ Fare rationale can readily be distinguished in New York, even from a constitutional point of view, in a situation where a juvenile requests to speak with his parents rather than with his probation officer. In Fare v Michael C. (442 US 707, supra), it was held that a 16V2- *880 year-old juvenile’s request to speak with his probation officer did not constitute a per se request to remain silent. The following are distinguishing factors to be considered: (a) long before the advice of counsel became sacrosanct, history and society as a whole have looked upon parents as the true and faithful guardians and protectors of their child’s moral and legal rights as reflected in the following divine imperative: “Listen, my son, to the instruction of thy father, and forsake not the law of thy mother.” (Proverbs: I, 8.) Surely, this critical position and unique posture of a parent is not to be equated with that of a probation officer; (b) obviously the conflict of interest facing a probation officer is inapplicable to the role of a parent, who is especially capable of offering independent advice; and (c) as stated in Matter of Michelet P. (70 AD2d 68, 75, supra), parent-child communications are privileged (also see People v Doe, 61 AD2d 426), unlike the communications between a probation officer and a minor.
In other words, from a juvenile’s point of view, the request to consult a parent is the equivalent of a request to consult an attorney, which, pursuant to Miranda v Arizona (384 US 436, 473, 474, supra) amounts to an invocation of the Fifth Amendment privilege. (See People v Burton, 6 Cal 3d 375; also see Matter of Roland K., 82 Cal App 3d 295; Fields v State, 377 So 2d 223 [Fla]; Sublette v State, 365 So 2d 775 [Fla]; Matter of Dino, 359 So 2d 586 [La]; Commonwealth v Lawson, 478 Pa 200; Commonwealth v Roane, 459 Pa 389; Matter of R.E.J., 511 SW2d 347 [Tex].)
“It is fatuous to assume that a minor in custody will be in „ a position to call an attorney for assistance and it is unrealistic to attribute no significance to his call for help from the only person to whom he normally looks — a parent or guardian.” (People v Burton, Supra, p 382.)
This theme is repeated in Commonwealth v Cain (361 Mass 224, 229, n 3) as follows: “The Miranda warning that a boy had a right to consult a lawyer was hollow indeed when he was denied access to his father who, practically speaking, was the only avenue through which he could effectively evaluate and, if he wished, exercise the right to counsel.”
*881 The Supreme Court employed the Miranda warnings as a protective device to dispel the compulsion inherent in custodial surroundings. (Miranda v Arizona, 384 US 436, 457, 458, supra.) It has been held that “[t]he mere recital of his ‘rights’ to a youth of 14, who was unattended by a guardian * * * was insufficient to alleviate the coercive atmosphere borne of these circumstances.” (Matter of Nelson, 58 Misc 2d 748, 750.)
The capacity of a juvenile, who, as in our case, is 14 years old, to comprehend his constitutional rights and knowingly and voluntarily waive them is addressed in Gallegos v Colorado (370 US 49, 54, supra) as follows: “A 14-year-old boy, no matter how sophisticated * * * is unable to know how to protect his own interests or how to get the benefits of his constitutional rights * * * Without some adult protection against this inequality, a 14-year-old boy would not be able to know, let alone assert, such constitutional rights as he had.”
To ensure that a reading of Miranda “rights” accomplishes its purpose, and does not merely degenerate into a hollow recitation of Miranda “rites”, several proposals have been made suggesting that a juvenile should be given competent adult advice before being allowed to waive these rights. (See President’s Comm on Law Enforcement & Administration of Justice, Challenge of Crime in a Free Society, p 87 [1967]; Council of Judges of National Council on Crime & Delinquency, Model Rules for Juvenile Courts, rule 25, p 53 [1969]; Institute of Judicial Administration, American Bar Assn. Joint Comm on Juvenile Justice Standards, Standards Relating to Police Handling of Juvenile Problems, standard 3.2.) A few States have statutorily provided for such proposed prewaiver advice for juveniles (e.g., Col Rev Stat Ann, § 19-2-102, subd [3], par [c], cl [I]; Conn Gen Stat Ann, § 46b-137, subd [a]; Okla Stat Ann, tit 10, § 1109, subd A; Tex Fam Code Ann, § 51.09).
In New York it has been noted that section 724 of the Family Court Act and CPL 140.20 (subd 6) mandate that the police immediately notify the parent of a juvenile, who has been arrested, as to his arrest and where he is being detained. Case law has rendered inadmissible per se any statements made by a defendant in violation of these *882 statutory provisions. However, it would appear that this indirect approach alone is inadequate. Perhaps New York should specifically address the problems raised by juvenile waiver of constitutional rights and, as has been recommended, require that a juvenile, upon arrest, be advised of his right to see his parents for counsel. (See 77 Dickinson L Rev 543, 559.) Another recommendation to be considered is that: “something more than the Miranda warning seems necessary. The child should be told that it is in his best interest to remain silent until he has spoken with his parent or guardian. Information obtained without such a warning should be suppressed at trial”. (68 Col L Rev 1149, 1164.)
These modest proposals to protect the constitutional rights of juveniles, who, since September 1, 1978 (L 1978, ch 481), in relation to certain crimes are subject to arrest, indictment, and conviction as adults, are suggested in the same spirit expressed by the Rogers court, which commented on the extension of attorney protection for adults and explained that the extension represented: “no great quantitative change, in the protection we have extended to the individual as a shield against the awesome and sometimes coercive force of the State * * * [T]he attorney’s presence serves to equalize the positions of the accused and sovereign, mitigating the coercive influence of the State and rendering it less overwhelming.” (People v Rogers, 48 NY2d 167, 173.)
The Hauswirth court recorded this extended protection as follows: “The protection afforded the accused against police interrogation in the absence of counsel has been dramatically extended in recent years. It has been established that once an attorney enters the proceeding (People v Hobson, 39 NY2d 479) a defendant in custody may not waive his rights to counsel in the absence of counsel and be questioned by police concerning matters on which he is represented or concerning the subject of the proceeding. The rule was subsequently expanded to preclude custodial questioning concerning crimes unrelated to those on which the defendant is represented (People v Rogers, 48 NY2d 167, supra; see, also, People v Smith, 54 NY2d 954; People v Bartolomeo, 53 NY2d 225; People v Kazmarick, 52 NY2d *883 322), and further expanded to preclude noncustodial questioning about the very same matters on which the defendant is represented (People v Skinner, 52 NY2d 24; see, also, People v Knapp, 57 NY2d 161; People v Sanders, 56 NY2d 51).” (People v Hauswirth, 89 AD2d 357, 358.)
To allow such a dramatic extension of an adult’s right to counsel so as to equalize the positions of the accused and sovereign and, at the same time, to deny the juvenile offender, who now faces adult culpability, the right to consult with his parents (as espoused by the protagonists of the Fare dogma) and, in effect, to narrow the juvenile’s rights and derogate him to an inferior position is to effectuate the fears of the United States Supreme Court, as expressed in Kent v United States (383 US 541, 556): “There is evidence, in fact, that there may be grounds for concern that the child receives the worst of both worlds: that he gets neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children.”
Were the defendant in this case a career criminal and hardened recidivist who was also expertly aware of his constitutional rights, by his being represented by counsel on other pending criminal matters, he would not be allowed to waive his right to counsel in the absence of counsel, as a matter of law. However, as is the case with the defendant in this matter, since this is his first arrest and, as a 14 year old, not being mature enough to comprehend and appreciate his constitutional rights, there are those who would argue that such a juvenile can effectively waive his rights, as a matter of law, in the absence of adult counsel. This Kafkaesque situation would protect from the coercion of custodial interrogation only the experienced and knowledgeable accused, while leaving the inexperienced accused, the one most in need of the preventive purpose and protection of Miranda (supra), unaided. (See 21 Boston Coll L Rev 922, 946.) Thus, in the opinion of this court, the afore-mentioned modest proposals for a special . preinterrogation warning for juveniles, advising them of their right to consult their parents and remain silent until that time, should be implemented in New York if only to afford juveniles the equal or equivalent protection of the *884 law afforded adults. As poignantly stated: “Extending procedural protections to the juvenile not given the adult does not mean juveniles have more rights than adults, but is based on the belief that without them juveniles are in an inferior position.” (See 77 Dickinson L Rev 543, 550.)
CPL 140 APPLICABLE TO JUVENILE OFFENDERS
NOT SECTION 724 OF THE FAMILY COURT ACT
Defendant Castro stands accused as a juvenile offender (see Penal Law, § 10.00, subd 18; § 30.00, subd 2; CPL 1.20, subd 42), not as a juvenile delinquent (see Family Ct Act, § 712, subd [a]). Nevertheless, courts have recently applied the provisions of section 724 of the Family Court Act to juvenile offender situations (People v King, 116 Misc 2d 614; People v Coker, 103 Misc 2d 703, supra), along with the specifically applicable provisions of CPL article 140. (See CPL 140.20, subd 6; 140.27, subd 5; 140.40, subd 5; also see CPL 120.90, subd 7.) It is the opinion of this court that technically, in an arrest without a warrant situation, as in this case, CPL 140.20 (subd 6) is dispositive regarding juvenile offenders, not section 724 of the Family Court Act. Not only is this so because CPL 140.20 (subd 6) specifically states: “Upon arresting a juvenile offender,” but also because section 724 of the Family Court Act refers to the Family Court, which is appropriate for juvenile delinquency matters but not for juvenile offender situations (except, of course, for CPL art 725 removal). However, for the purposes of this case, the failure to comply with the notification requirements of CPL 140.20 (subd 6), as a matter of law, has the same legal ramifications as the failure to comply with section 724 of the Family Court Act, and any evidence obtained as a direct result thereof is to be deemed inadmissible per se.
It is also to be noted that the specific provisions relating to interrogation under subdivisions (b) and (d) of section 724 of the Family Court Act are technically not statutorily applicable to “Juvenile Offenders”. For example, section 724 (subd [b], par [ii]) of the Family Court Act provides for a situation where, after making every reasonable effort to notify the child’s parents, the peace officer determines that *885 it is necessary to question the child, the officer may question him for a reasonable period of time in a suitable place, so designated by the Appellate Division. It would appear to this court that since no interrogation option is specified in CPL 140.20 (subd 6), if the police fail to immediately notify the parent, no optional interrogation whatsoever may take place in the absence of such parent or other responsible adult. This preclusion, of course, is inapplicable in a situation where the defendant is so un-co-operative he renders notification to the parents impossible (see Matter of James B., 78 AD2d 793), or where the parents are un-co-operative (see Matter of Raphael A., 53 AD2d 592, supra). On the other hand, it would appear that such procedural protections to the juvenile, such as questioning, when allowed, are only to take place in a “facility designated by the appropriate appellate division of the supreme court as a suitable place for questioning of children” (Family Ct Act, § 724, subd [b], par [ii]), and should be applicable to both juvenile offenders as well as juvenile delinquents. This court recommends that these technical disparities and lacunae be resolved by the Legislature so as to preserve the procedural protections afforded to juveniles, whether they be delinquents or offenders. Although this court is familiar with the recently enacted juvenile delinquency legislation, which, effective July 1, 1983, adds a new article 3 to the Family Court Act (L 1982, ch 920; also see L 1982, ch 926), including subdivision 7 of section 305.2, which requires Miranda preinterrogation warnings to be read to both child and parent (only “if present”), many of the problems and recommendations mentioned in this decision have yet to be specifically addressed. Hopefully, the Legislature will complete the work it has begun to ensure the procedural rights of all juveniles.
HUNTLEY CONCLUSION
With regard to the suppression of the two statements made by defendant Castro on the night of April 30, 1982, the court grants defendant’s motion. When Police Officer Hoerte arrived at the 104th Precinct with the defendant at 10:15 p.m., and had been made aware that the defendant was 14 years old, the officer should have immediately notified the defendant’s parents, pursuant to CPL 140.20 *886 (subd 6). According to Police Officer Hoerte’s own testimony, he first attempted to phone the defendant’s parent one-half hour later, at 10:45 p.m. It is the opinion of the court that this delayed attempt and all other attempts allegedly made thereafter were feeble and insufficient. (See People v Coker, 103 Misc 2d 703, 711, 712, supra.) The fact that the defendant made various attempts to contact his parent should have been interpreted by the officer as a request to consult a parent, which, as has been determined by this court after extensive analysis, is the equivalent of a request to consult an attorney and, which, pursuant to Miranda (supra), amounts to an invocation of the Fifth Amendment privilege. In the words of Miranda (pp 473-474): “If [a suspect in custody] indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.” This court finds that the two statements obtained from the defendant were a direct result of the failure to comply with CPL 140.20 (subd 6), and in violation of the defendant’s constitutional right to remain silent, and are to be deemed inadmissible per se.
Furthermore, this court finds that these statements are not admissible as being “spontaneously volunteered”. (People v Hobson, 39 NY2d 479, 483, supra.) To fit within this narrow exception the “spontaneity has to be genuine and not the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed.” (People v Maerling, 46 NY2d 289, 302-303.) Given the unique circumstances of this case, where the officer said something to the effect that “they’re going to walk away from this and, you know, you’re going to be left holding the bag and I said it would be to his benefit to let me know who these other guys were” (emphasis supplied), there can be no conclusion other than that the defendant’s statements do not fall within the exception of being “spontaneously volunteered”.
Based on all the reasons stated above, the defendant’s motion to suppress the statements is granted. As has already been noted, the defendant’s Wade motion is denied.