OPINION OF THE COURT
William D. Friedmann, J.
The 16-year-old defendant, living in a home afflicted by *1072 alcoholic problems and showing early signs of such addiction, has been charged with arson in the third degree (Penal Law § 150.10 — C felony) and burglary in the second degree (Penal Law § 140.25 — C felony). Through a Huntley-Dunaway type motion (People v Huntley, 15 NY2d 72 [1965]; Dunaway v New York, 442 US 200), defendant challenges the voluntariness and acceptability of a statement made to a New York City fire marshal (CPL 60.45). Defendant relies upon three specific contentions:
1) his competence or capacity because of age, intelligence or experience to waive Miranda rights (Miranda v Arizona, 384 US 436 [1966]),
2) the propriety of the delivery of Miranda rights by the fire marshal,
3) the adequacy of nonverbal waiver responses thereto, and
4) the probable cause basis for the custodial interrogation by the fire marshal.
CAPACITY TO WAIVE MIRANDA RIGHTS AS EFFECTED BY AGE
The competence of an individual to effectively waive Miranda rights is tested by an over-all consideration of the "totality of the circumstances” surrounding the waiver. (Fare v Michael C, 442 US 707 [1979].)
While age, intelligence and educational level, life experience and social problems (here family alcoholic background), etc., are circumstances to be considered in determining an individual’s competence or capacity to effectively waive Miranda rights, there appears to be no realistic evidence that the fire marshal here used any trickery, force, threats, promises or any form of coercion of any sort which would have made defendant’s responsive statement to the fire marshal involuntary. Rather, the evidence adduced at the suppression or exclusion hearing seems convincing that there was no "improper conduct or undue pressure which impaired the defendant’s physical or mental condition” (CPL 60.45 [2] [a]). (People v Yerdon, 51 AD2d 875; People v Dunbar, 71 AD2d 805.)
The evidence here establishes beyond a reasonable doubt that this 16-year-old defendant voluntarily made the statement, "I’m willing to talk. The fire was an accident”, after adequate warnings communicated to him by the fire marshal and understood by him. (See, Grisso, Juveniles’ Capacities To Waive Miranda Rights: An Emperical Analysis, 68 Calif L Rev *1073 1134 [1980]; Grisso, Juveniles’ Waiver of Rights [1981]; also see, the comprehensive review of juvenile waiver in New York by Supreme Court Justice Eugene P. Bambrick in People v Castro, 118 Misc 2d 868 [Queens County 1983].)
DELIVERY OF MIRANDA WARNINGS NOT FLAWED
The fire marshal at the exclusionary hearing could not identify which official fire department Miranda warnings form he had used when administering defendant his required rights.
The court has now compared the two alternatives, the Miranda warning card and the Miranda warning sheet, both specifically prepared by the Bureau of Fire Investigations, Fire Department, City of New York, for the assistance of its fire marshals in their administration of Miranda warnings. They are similar in all respects except one. The card covers six warnings, while the sheet covers the same standard six warnings plus a seventh, which says: "3. If you do give a statement, you can stop at any time or not answer any questions you do not wish to answer. Do you understand?, subject replied”.
With respect to the wording and format of Miranda warnings, our courts have permitted great leeway in relating the essentials of the Miranda warnings to a suspect. The thrust of cases speaking on the subject has been to emphasize substance over form, and clearly avoid any kind of an unrealistic interpretation of Miranda based on techical grounds, when the underlying statement, admission or confession, may be otherwise reliable and voluntary. (California v Prysock, 451 US 1301 [1981].)
In finding that the delivery of Miranda warnings here were not flawed, it may be helpful to revisit Miranda and restate what the Supreme Court stated with respect to the substantive content of required warnings: "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.” (384 US, at 444.)
NONVERBAL NODS BY DEFENDANT— AS COMMUNICATING UNDERSTANDING AND AS AN EFFECTIVE WAIVER OF MIRANDA RIGHTS
The fire marshal indicated that defendant during the ad *1074 ministration of his warnings did not respond orally, until the very end, as he read to him from one of the two official fire department forms. Defendant only nodded his head, up and down, after each individual warning and in response to the follow-up inquiry of "Do you understand?” Defendant now questions whether his head nods constituted an effective waiver of his Miranda rights.
Most face-to-face communication of information, thoughts or feelings from one person to another is three-dimensional in nature: verbal, vocal, and facial. According to a formula devised by Dr. Albert Mehrabian, a research psychologist and author in the field of neurolinguistics, the impact of any communicated message can be assessed as follows: 7% verbal + 38% vocal + 55% facial = total impact.
Although the science of kinesics or kinesiology (a systematic study of the relationship between nonlinguistic body motions [as blushes, shrugs, or eye movement] or communication [Webster’s New Collegiate Dictionary (1980)]) is relatively new, there seems to be conclusive evidence that almost everyone has a great capacity for nonverbal communication, and that the communication of a message is a far more complex process than most people currently believe it to be.
It is not difficult to comprehend that different levels of competence in nonverbal communication do exist. For example — there are persons who have a high ability to control and convey a nonverbal message — a person skilled in hand or finger transmissions with respect to the sensory handicapped, a pantomimist, a ballet dancer or a professional gambler. Even those persons not possessing a high degree of nonlinguistic skills, use in their everyday lives, a wide range of facial expression and body language or communication. Facial expressions, including eye contact, can convey information, thoughts and feelings of anger, shock, surprise, fear, pleasure, pain, approval, disappointment, etc. The movement of shoulders, hands, arms, fists, fingers and tongues, etc., are routinely and universally employed to transmit messages of all sorts. Two of the most commonly used body movements are actions involving the head. Movement or nodding of the head up and down universally signifies an affirmative approval, yes or ok, while the movement of the head from side to side is equated with a negative reaction.
Defendant’s affirmative up and down nods herein, expressed in the context of the administration of the Miranda warnings, *1075 objectively indicated that he heard and appreciated what was being communicated by the fire marshal. His nonverbal head nods after each separate warning signified that the message had been received and understood. The entire two-way Miranda communication between defendant and the fire marshal was confirmed when defendant did orally respond to the final inquiry "Now that I have advised you of your rights, are you willing to answer questions?” (Miranda card) or "Now having understood all that I have said, are you willing to answer questions without an attorney present?” (Miranda sheet) when defendant did respond: "I’m willing to talk. The fire was an accident.” Therefore, this court must conclude that defendant’s nonverbal nods constituted an effective waiver of his Miranda rights. (See, Crapo, It’s Not Just the Words [NonVerbal Communications], Jud Seminar, Unified Ct Sys [Nov. 1985].)
PROBABLE CAUSE EXISTED FOR INTERROGATION
Based upon the exclusion hearing, any fair factual analysis of the events leading up to the June 9, 1986 custodial confrontation between defendant and the fire marshal demonstrates that the confrontation and interrogation thereat was based upon "sufficient probable cause” and not mere "reasonable suspicion” (Dunaway v New York, 442 US 200 [1979], supra).
Accordingly, all of the contentions are rejected and defendant’s motion to preclude the admissibility of his statement at trial is denied.